IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
03-1154
════════════
 
Russell 
Powell, Petitioner
 
v.
 
Honorable 
Judge Earl Stover, III, Respondent
 
════════════════════════════════════════════════════
On Petition for Writ of 
Mandamus
════════════════════════════════════════════════════
 
 
Justice O’Neill delivered the opinion 
of the Court.
 
 
This 
is an initial child-custody case in which both Texas and Tennessee claim jurisdiction.  We 
must decide whether Texas is the child’s “home state” for purposes of the 
Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and thus 
whether the Texas trial court properly assumed jurisdiction over the case.  We hold that, because the child lived in 
Tennessee with his parents for at least six consecutive months immediately 
before the child-custody proceeding was commenced, Texas is not the child’s home 
state and the trial court’s exercise of jurisdiction was improper.  Accordingly, we conditionally grant the 
petition for writ of mandamus and order the trial court to stay this proceeding 
and communicate with the Tennessee court.  
If the Tennessee court does not determine that Texas is a more 
appropriate forum, the trial court shall dismiss this proceeding.  The writ will issue only if the trial 
court does not comply.
I
In 
February 2001, Russell Powell moved from Texas to Tennessee to accept a new 
position with his employer.  In May 
2001, his wife, Sonia Powell, sold her house in Texas, closed her Texas bank 
accounts, and moved with the couple’s son, D.B.P., to Tennessee to join 
Russell.  There, the couple leased a 
house with an option to buy.  Within 
a week of her arrival in Tennessee, Sonia obtained a Tennessee driver’s license, 
opened a checking account with a Tennessee bank, and began applying for 
jobs.  She and Russell enrolled 
D.B.P. in kindergarten.  Sonia 
delivered newspapers for a short time and then began working at Wal-Mart in 
September 2001.  On April 24, 2002, 
Sonia moved back to Texas and took D.B.P. with her.  At the time, she was seven months 
pregnant with D.T.P., who was later born in Texas.
Approximately 
two weeks after arriving in Texas, on May 6, 2002, Sonia filed for divorce in 
Hardin County, Texas, requesting managing conservatorship of D.B.P.  She asserted in her petition that she 
had been a domiciliary of Texas for the preceding six-month period and a 
resident of Hardin County for the preceding 90-day period.  Sonia testified that she was born and 
raised in Texas, that she was “trying [Tennessee] out,” and that she did not 
intend to reside permanently in Tennessee.  
On August 5, 2002, the trial court issued temporary orders appointing 
Sonia temporary managing conservator of D.B.P.  
Russell 
filed for divorce in Tennessee two weeks after Sonia filed in Texas.  The Tennessee court issued a temporary 
parenting plan on May 21, 2002, awarding custody of D.B.P. to Russell.  The court also found that Tennessee “has 
jurisdiction over [D.B.P.] as the parties did not separate until April 22, 
2002.” 
Russell 
then filed in the Texas proceeding a plea in abatement and a motion to dismiss 
for lack of jurisdiction arguing that the “Tennessee Court secured service of 
citation first,” giving it “exclusive jurisdiction over this divorce 
action.”  He further claimed that 
abatement and dismissal were required because neither he nor Sonia had been “a 
domiciliary of Texas for [the] six months . . . preceding the 
filing of this suit [or] a resident of [Hardin] County for ninety days preceding 
this suit,” as required by the Texas Family Code.  Tex. Fam. Code § 6.301.
The 
trial court denied Russell’s plea in abatement, stating in a letter to 
counsel:  “This case involves a very 
close question of fact.  The fact 
that both children were born in Texas and that the home state of the youngest 
child is clearly Texas are persuasive.  
The Motion for Abatement is denied.”  The court also entered an order denying 
the motion to dismiss for lack of jurisdiction without explanation.  
Russell 
sought mandamus relief, asking the court of appeals to vacate the trial court’s 
order and to transfer the case to the Chancery Court of Hawkins County, 
Tennessee.  A divided court of 
appeals denied mandamus relief, holding that the trial court did not abuse its 
discretion in retaining jurisdiction because Texas was clearly D.T.P.’s home state, and there was “a fact issue on whether 
[Sonia’s] time spent in Tennessee was a temporary absence” and thus whether 
Texas or Tennessee was D.B.P.’s home state.  121 S.W.3d 846, 
847.  Russell petitioned this 
Court,[1] 
claiming the trial court lacked subject-matter jurisdiction over this custody 
dispute because, among other things, Texas is not D.B.P.’s home state.  
Russell does not challenge the trial court’s jurisdiction over the 
dispute as to D.T.P., who has never lived anywhere but Texas.  
II
In 
considering Russell’s petition, we focus on the trial court’s ruling.  In re Meador, 
968 S.W.2d 346, 350 (Tex. 1998).  
A writ of mandamus is an appropriate means to require a trial court to 
comply with the UCCJEA’s jurisdictional 
requirements.  See In re 
Forlenza, 140 S.W.3d 373, 379 (Tex. 2004); 
Geary v. Peavy, 878 S.W.2d 602, 603 (Tex. 1994) 
(stating that mandamus is an appropriate remedy to resolve a jurisdictional 
dispute under the former Uniform Child Custody Jurisdiction Act).  The question in this case, then, is 
whether the trial court abused its discretion in denying Russell’s motions to 
abate and dismiss.  A trial court 
abuses its discretion if it fails to analyze or apply the law correctly.  Walker v. 
Packer, 827 S.W.2d 833, 840 (Tex. 1992).  Construction of the UCCJEA’s “home state” provision as codified in the Texas 
Family Code is a question of law that we review de novo.  See McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). 
III
Effective 
September 1, 1999, Texas adopted the UCCJEA, which replaced the previously 
adopted Uniform Child Custody Jurisdiction Act (UCCJA).  Act of Apr. 22, 1999, 76th Leg., R.S., 
ch. 34, ' 
1, 1999 Tex. Gen. Laws 52 (codified at Tex. Fam. Code §§ 152.001-152.317).  The UCCJA provided four bases for 
jurisdiction over a custody dispute, but did not prioritize one over the 
others.  Act of 
May 2, 1983, 68th Leg., R.S., ch. 160, § 1, 1983 Tex. 
Gen. Laws 691, 693-94 (as amended), repealed by Act of Apr. 22, 1999, 
76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52, 
64-65.  This often led courts 
in different states to simultaneously exercise jurisdiction in child-custody 
cases.  The UCCJEA was designed, in 
large part, to remedy this situation by prioritizing home-state 
jurisdiction.  Stoner, The 
Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)CA 
Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA), 75 
N.D. L. Rev. 301, 313 (1999); 
House Comm. on Juvenile Justice and 
Family Issues, Bill Analysis, Tex. H.B. 797, 76th Leg., R.S. (1999) 
(stating that “this Act revises the child custody jurisdiction law to prioritize 
home state jurisdiction”); see In re Forlenza, 
140 S.W.3d at 374-75 (discussing the UCCJEA in the context of continuing 
jurisdiction over custody matters).  
The Texas Family Code accordingly prioritizes home-state jurisdiction and 
provides in pertinent part that a court of this state has jurisdiction to make 
an initial child-custody determination only if
 
(1) 
this state is the home state of the child on the date of the commencement of the 
proceeding, or was the home state of the child within six months before the 
commencement of the proceeding and the child is absent from this state but a 
parent or person acting as a parent continues to live in this state[.]
 
Tex. Fam. Code § 152.201(a)(1).  Because 
this case involves an initial child-custody determination, and home-state 
jurisdiction has priority, the question presented is whether, on the date the 
proceeding was commenced, Texas or Tennessee was D.B.P.’s home state.  

The 
Texas Family Code defines “home state” as 
 
the state in which a child lived with a parent . . . for at 
least six consecutive months immediately before the commencement of a child 
custody proceeding. . . . A period of temporary absence of a parent . . . is 
part of the period.
 
Id. § 152.102(7).  Russell asserts that this language 
creates a bright-line, six-month test focused on the child’s physical 
presence.  Hence, in his view, D.B.P.’s ten-month stay in Tennessee with his parents 
confers home-state jurisdiction on the Tennessee court.  But Sonia claims the proper analysis is 
not so simple.  She argues that 
D.B.P.’s time in Tennessee was merely a “temporary 
absence” from Texas and that Texas remained D.B.P.’s 
home state throughout his stay in Tennessee because Sonia intended to be there 
only temporarily.  We reject Sonia’s 
argument for a number of reasons.
First, 
Sonia’s argument presumes that her own intent should control and that Russell’s 
is irrelevant.  But the Family 
Code’s definition of “home state” is the state “in which a child lived with a 
parent,” and Russell is a parent with whom D.B.P. undisputedly lived in 
Tennessee for over ten consecutive months preceding commencement of the custody 
dispute.  Sonia’s premise, that she 
did not “reside” in Tennessee and therefore D.B.P. didn’t either, necessarily 
presumes that she is the only parent that the statute covers, which of course is 
not the case.  Even if Sonia’s 
residence in Tennessee was temporary because she intended to return to Texas, as 
she claims, it is immaterial in determining whether Tennessee acquired 
home-state status through Russell.  

Second, 
we believe that a test based on subjective intentCwhether 
it examines the intent of the mother, the father, or the childCwould 
thwart the UCCJEA’s meaning and purpose.  When interpreting statutes we try to 
give effect to legislative intent.  
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 
383 (Tex. 2000).  In doing 
so, we look first to the plain and common meaning of the statute’s 
words.  Fitzgerald v. Advanced 
Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 
(Tex. 1999).  The Family Code 
defines “home state” as the state in which a child “lived” with a parent.  Tex. Fam. Code § 152.102(7).  The word “lived” strongly connotes 
physical presence.  See Webster’s Third New International 
Dictionary 1323 (1961) (defining “live” as “to occupy a home”).  We think it significant that the 
Legislature chose the word “lived” as opposed to “resided” or “was 
domiciled.”  The test for 
“residence” or “domicile” typically involves an inquiry into a person’s 
intent.  See Mills v. 
Bartlett, 377 S.W.2d 636, 637 (Tex. 1964) (“Volition, intention and action 
are all elements to be considered in determining where a person resides and such 
elements are equally pertinent in denoting the permanent residence or 
domicile.”).  In our view, the 
Legislature used the word “lived” “precisely to avoid complicating the 
determination of a child’s home state with inquiries into the states of mind of 
the child or the child’s adult caretakers.”  Escobar v. Reisinger, 64 P.3d 514, 517 (N.M. Ct. App. 
2003).  
The 
purposes behind the UCCJEA further suggest that a child’s physical location is 
the central factor to be considered when determining a child’s home state.  The UCCJEA was intended to make the 
determination of jurisdiction more straightforward.  For instance, the comments to the 
original version of the UCCJEA, written by the National Conference of 
Commissioners on Uniform State Laws and adopted substantially unchanged by 
Texas, state that the UCCJEA should be interpreted to “[a]void jurisdictional 
competition and conflict with courts of other States,” to “[p]romote cooperation with the courts of other States,” to 
“[d]iscourage the use of the interstate system for 
continuing controversies over child custody,” and to “[d]eter abductions of children.”  Uniform Child Custody Jurisdiction & 
Enforcement Act § 101 cmt., 9 U.L.A. 657 
(1999).  The UCCJEA achieves this 
purpose by prioritizing home-state jurisdiction, which helps to avoid the 
jurisdictional competition and conflict that result when courts in different 
states determine jurisdiction based on subjective factors.  See Welch-Doden v. Roberts, 42 P.3d 1166, 
1173 (Ariz. Ct. App. 2002).  The 
UCCJEA was thus intended to give prominence to objective factors.  We believe that the UCCJEA should be 
construed in such a way as to strengthen rather than undermine the certainty 
that prioritizing home-state jurisdiction was intended to promote, and thus 
decline to apply a test to determine where a child “lived” based on the parties’ 
subjective intent.  See 
Escobar, 64 P.3d at 517 (determining a child’s “home state” should not 
involve “inquiries into the states of mind of the child or the child’s adult 
caretakers”); see also In re Marriage of Schoeffel, 644 N.E.2d 827, 829 (Ill. App. Ct. 1994) 
(stating that “the intent of the parties is not controlling for purposes of the 
[UCCJA]”).
The 
trial court in this case was apparently persuaded by the fact that “both 
children were born in Texas and that the home state of the youngest child is 
clearly Texas.”  The court of 
appeals was additionally persuaded by the fact that D.B.P. “was born in Texas 
and lived here until he was nearly five years old, when the family moved to 
Tennessee.”  121 
S.W.3d at 847.  Thus, both 
courts effectively applied a test that considered the totality of the facts and 
circumstances to determine D.B.P.’s home state.  At least one Texas court of appeals 
appears to have adopted a similar approach.  See In re Estes, 153 S.W.3d 591, 
598 (Tex. App.BAmarillo 
2004, no pet.) (considering factors such as the 
parents’ intent as well as other facts and circumstances in deciding where a 
child lived).  Some courts from 
other jurisdictions have also adopted a similar approach.  See, e.g., Chick v. 
Chick, 596 S.E.2d 303, 308 (N.C. Ct. App. 2004) (deeming a totality of the 
circumstances approach “the most appropriate choice”); In re S.M., 938 
S.W.2d 910, 918 (Mo. Ct. App. 1997) (stating that “the totality of the 
circumstances test is best suited to adequately deal with the variety of 
situations which occur”).  But a 
test based on the totality of the circumstances suffers from essentially the 
same weakness as a purely intent-based test; both seek to promote flexibility at 
the expense of the jurisdictional certainty that the home-state provision was 
intended to provide.  
This 
does not mean that the UCCJEA’s purpose is intractable 
irrespective of the circumstances a particular case presents.  Two other sections of the UCCJEA provide 
the flexibility needed to avert potential injustice once the trial court has 
determined the child’s home state.  
The first, section 152.208, states that if a court acquires jurisdiction 
“because a person seeking to invoke its jurisdiction has engaged in 
unjustifiable conduct,” then with certain exceptions “the court shall decline to 
exercise jurisdiction.”  Tex. Fam. Code § 
152.208.  Thus, for 
example, were a state to acquire home-state jurisdiction through a parent’s 
illegal or improper actions, the court could decline to exercise 
jurisdiction.  The second, section 
152.207, is the inconvenient-forum provision; it allows the home-state court to 
defer jurisdiction if the court is an inconvenient forum under the circumstances 
and a court in another state would provide a more appropriate forum.  Id. ' 
152.207; Tenn. Code Ann. § 36-6-222 (Tennessee’s version of the 
UCCJEA).  In 
making such a determination, the home-state court may consider: 
 
(1) 
whether domestic violence has occurred and is likely to 
continue in the future and which state could best protect the parties and the 
child;
 
(2) 
the length of time the child has resided outside this 
state;
 
(3) 
the distance between the court in this state and the 
court in the state that would assume jurisdiction;
 
(4) 
the relative financial circumstances of the 
parties;
 
(5) 
any agreement of the parties as to which state should 
assume jurisdiction;
 
(6) 
the nature and location of the evidence required to 
resolve the pending litigation, including testimony of the child;
 
(7) 
the ability of the court of each state to decide the 
issue expeditiously and the procedures necessary to present the evidence; 
and
 
(8) 
the familiarity of the court of each state with the 
facts and issues in the pending litigation.
 
Tex. Fam. Code § 152.207; see also 
Tenn. Code 
Ann. § 36-6-222.  Applying a physical-presence test to 
determine home-state jurisdiction, then allowing that court to consider the 
forum’s relative convenience, creates jurisdictional certainty without diluting 
the significance of the underlying facts and circumstances presented in an 
individual case.
We 
therefore hold that in determining where a child lived for purposes of 
establishing home-state jurisdiction, the trial court must consider the child’s 
physical presence in a state.  See Escobar, 64 P.3d at 517 (stating that the proper test 
“focuses on the historical fact of the child’s physical presence in a 
jurisdiction”); Schoeffel, 644 N.E.2d at 829-30 
(looking solely to the duration of a child’s presence when determining home 
state).  To the extent that 
In re Estes conflicts with our holding, we disapprove the decision.  Estes, 153 
S.W.3d at 598.  D.B.P.’s physical presence in Tennessee with his parents for 
over ten months immediately before the commencement of this custody proceeding 
conclusively establishes that he “lived” in Tennessee and that Tennessee is 
D.B.P.’s home state under Texas’s version of the 
UCCJEA. 
As 
we have said, the UCCJEA allows the court in a child’s home state to defer 
jurisdiction to a court of another state if the home state is an inconvenient 
forum under the circumstances and the other state would be a more appropriate 
forum.  See Tex. Fam. Code § 152.207; Tenn. Code Ann. ' 36-6-222.  In this instance, D.B.P. has strong ties 
to Texas because he lived in Texas for five years before moving to Tennessee, 
and Texas is his brother’s home state.  
It would presumably be undesirable to require custody disputes to proceed 
in different states if one court can resolve all custody issues.  But the question of whether Texas is a 
more appropriate forum than Tennessee is not for the Texas court to decide; it 
is a determination that must be made by a court in D.B.P.’s home state, which in this case is Tennessee.  
IV
We 
conclude that the trial court abused its discretion in denying Russell’s request 
to abate these proceedings in favor of the Tennessee court.[2]  In a situation like this, when there are 
simultaneous custody proceedings in different states, the Family Code details 
the proper procedure: 
 
If 
the [Texas trial] court determines that a child custody proceeding has been 
commenced in a court in another state having jurisdiction substantially in 
accordance with this chapter, the court of this state shall stay its proceeding 
and communicate with the court of the other state.  If the court of the state having 
jurisdiction substantially in accordance with this chapter does not determine 
that the court of this state is a more appropriate forum, the court of this 
state shall dismiss the proceeding.
 
Tex. Fam. Code § 152.206(b).  Here, Tennessee’s exercise of 
jurisdiction is “substantially in accordance with [the UCCJEA]” because 
Tennessee is D.B.P.’s home state.  Id.  Accordingly, without 
hearing oral argument, Tex. R. App. P. 52.8(c), we conditionally 
grant the petition for writ of mandamus and order the trial court to stay this 
proceeding and communicate with the Tennessee court.  If the Tennessee court does not 
determine that Texas is a more appropriate forum, the trial court shall dismiss 
this proceeding.  The writ will 
issue only if the trial court does not comply.
 
 
 
___________________________
Harriet 
O’Neill
Justice
 
OPINION 
DELIVERED:  May 27, 
2005
 
 
 
 




[1] Though the relator styled 
this case as a petition for review, he challenges the court of appeals’ denial 
of mandamus relief and does not appeal from a final order.  See Tex. Gov’t Code ' 22.001.  Therefore, we treat it as a petition for 
writ of mandamus in this Court as well. 

[2]  In the 
court of appeals, Russell filed a motion arguing that Sonia falsified the 
residency requirements of section 6.301 and failed to provide sworn information 
about where D.B.P. lived as section 152.209 requires.  Tex. Fam. Code '' 6.301, 152.209.  Sonia’s actions, Russell claimed, 
amounted to unjustifiable conduct as described in section 152.208 and should 
have resulted in dismissal.  
Id. ' 152.208.  
The court of appeals did not address these issues, and Russell asserts 
that we should remand this case to the court of appeals to consider them.  Because of our holding today, we decline 
to remand these issues for 
consideration.