**In re Ann M. FORLENZA.**

No. 03–0299.

Supreme Court of Texas.

Argued Dec. 10, 2003.

Decided July 9, 2004.

Gregory T. Brewer, Gore & Brewer, P.C., Larry R. Boyd, Abernathy Roeder Robertson & Joplin, P.C.,McKinney, and Brad M. LaMorgese, Cooper & Scully, P.C., Dallas, for Relator.

Sharon N. Freytag, Haynes & Boone, L.L.P., Charles H. Robertson, and Alma R. Benavides, Robertson & Railsback, Dallas, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

After the trial court in this case made an initial child-custody determination, the children lived with their custodial parent in four different states over a five and one-half year period while the non-custodial parent remained in Texas. In this modification suit, we must decide whether significant connections with Texas exist or substantial evidence is available here such that the initial trial court retained exclusive continuing jurisdiction under section 152.202(a)(1) of the Texas Family Code. Based on the record presented, we hold that the trial court retained exclusive continuing jurisdiction over the modification proceedings and the court of appeals erred in concluding otherwise. 2003 WL 1227214. Because the relator lacks an adequate remedy by appeal, we grant the petition for writ of mandamus and order

the court of appeals to vacate its order directing the trial court to dismiss the case for lack of jurisdiction.

## I

Ann Marie and Robert Joseph Forlenza were divorced in Collin County, Texas, on March 1, 1996. On July 23, 1997, the trial court signed an agreed modification order, modifying the original divorce decree, that granted Robert primary custody of their two children, now ten and fourteen years old, and the exclusive right to establish their primary physical residence. That same month, the children moved with Robert to Issaquah, Washington. Over the next five years, Robert moved with the children three more times—on August 30, 1998, they moved to Ohio, on February 19, 1999, they moved to Virginia, and on August 27, 2002, they moved to Colorado where they now reside.[1]

The current dispute arose in 2001 when Robert lost his job in Virginia and was offered a two-year contract job in Taipei, Taiwan. Claiming that she had experienced difficulty in exercising her possession rights, Ann filed this suit on September 10, 2001, seeking to modify the prior agreed possession order. She also requested a restraining order prohibiting Robert from relocating the children outside the United States, which the trial court granted. Robert filed a countermotion to clarify and, alternatively, to modify prior orders. In his motion, Robert averred that the Collin County court had exclusive continuing jurisdiction over the suit as a result of prior proceedings. Shortly thereafter, on October 8, 2001, Robert filed a motion to dismiss alleging

that the trial court did not have jurisdiction to issue an initial child-custody order, and alternatively requesting the trial court to decline jurisdiction in favor of Virginia, where the children then resided with their father and his new wife. After a hearing on November 29, 2001, the court denied Robert's motion and the parties proceeded to prepare the case for trial, which was ultimately set for February 3, 2003.

During a pretrial conference seven days before the scheduled trial date, Robert filed a second motion to dismiss alleging that the court did not have exclusive continuing jurisdiction under Texas Family Code section 152.202(a) to modify its previous child-custody order. The trial court conducted another evidentiary hearing and denied the motion.[2] The court of appeals, however, concluded that the trial court had abused its discretion and granted Robert's petition for writ of mandamus, ordering the trial court to vacate its prior order and dismiss the case. 2003 WL 1227214. We granted Ann's petition to determine whether the trial court retained exclusive continuing jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA).

## II

Effective September 1, 1999, Texas adopted the UCCJEA, replacing the previous Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJEA was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters. The Act that the UCCJEA replaced, the UCCJA, was drafted

---

1. On August 6, 2002, Robert sent Ann notice that he was moving with the children back to Washington where he had a job offer. While visiting his family in Colorado en route to Washington, Robert decided to permanently move to Colorado.

2. The trial court also denied Robert's alternative request to dismiss the case on inconvenience grounds, a ruling that Robert does not challenge here.

in 1968 as a model act designed to prevent repeated custody litigation. But even though all fifty states adopted the UCCJA, some did so with significant departure from the original text. As a result, states often interpreted the Act inconsistently and child-custody determinations made in one state were often not accorded full faith and credit in another.

To address some of these problems, in 1980 Congress enacted the Parental Kidnaping Prevention Act (PKPA), which requires states to accord full faith and credit to custody decrees issued by sister states that substantially comply with the PKPA. 28 U.S.C. § 1738A (2000). The PKPA authorizes exclusive continuing jurisdiction in the state that issued the original decree as long as one parent or child remains there and that state has exclusive continuing jurisdiction under its own law. *Id.* § 1738A(d). The UCCJA, though, which the states had adopted, does not clearly articulate when a decree-granting state retains exclusive continuing jurisdiction. As states adopted different interpretations of continuing jurisdiction and reached conflicting conclusions about the circumstances under which it endures, the law's uniformity diminished, often resulting in simultaneous proceedings and conflicting custody decrees. *See generally* LINDA K. GIRDNER & PATRICIA M. HOFF, OBSTACLES TO THE RECOVERY AND RETURN OF PARENTALLY ABDUCTED CHILDREN: RESEARCH SUMMARY (1994). The UCCJEA was designed to eliminate inconsistent state interpretations of the UCCJA's jurisdictional aspects and

to harmonize the UCCJA with the PKPA. *See id.*

Article 2 of the UCCJEA specifically grants exclusive continuing jurisdiction over child-custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202, 9 U.L.A. 673–74 (Supp.2004). Rules that prevent another state from modifying a child-custody determination while exclusive continuing jurisdiction remains in the original-decree state complement these provisions.[3] Texas adopted Article 2 without substantial variation from the UCCJEA.

■ Robert's challenge involves the proper interpretation of section 152.202(a), which governs the duration of the decree-granting state's exclusive continuing jurisdiction. That section provides that a court of this state that has made an initial child-custody determination consistent with section 152.201 has exclusive continuing jurisdiction over the determination until

(1) a court of this state determines that *neither the child, nor the child and one parent,* nor the child and a person acting as a parent, *have a significant connection with this state and* that *substantial evidence is no longer available in this state* concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the

---

3. Section 203 provides that

a court of this State may not modify a child-custody determination made by a court of another State unless a court of this State has jurisdiction to make an initial determination under Section 201(a)(1) or (2) and:

(1) the court of the other State determines it no longer has exclusive, continuing jurisdiction under Section 202 or that a

court of this State would be a more convenient forum under Section 207; or

(2) a court of this State or a court of the other State determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

UNIF. CHILD CUSTODY JUR. & ENF. ACT, 9 U.L.A. 676.

child, the child's parents, and any person acting as a parent do not presently reside in this state.

TEX. FAM.CODE. § 152.202(a) (emphasis added). Robert does not challenge the prior child-custody order's compliance with section 152.201. And section 152.202(a)(2) does not apply because Ann continues to reside in Texas. Therefore, we must decide whether the trial court properly applied section 152.202(a)(1) in deciding that it had exclusive continuing jurisdiction over these modification proceedings. Statutory construction is a question of law that we review de novo. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003).

■ Robert's jurisdictional plea contends that Ann failed to establish that a significant connection with Texas exists and that substantial evidence is available here concerning the children's care, protection, training, and personal relationships. As a preliminary matter, Robert asserts that, in making this determination, the court may not consider any contacts that occurred or any evidence that was created after September 10, 2001. We agree that jurisdiction must be determined at the proceeding's commencement, which section 152.102(5) defines as the filing of the first pleading B in this instance, Ann's motion to modify the prior agreed possession order. *See* TEX. FAM.CODE. § 152.102(5). However, we disagree with Robert's contention that it was Ann's burden in the first instance to establish that the children have a significant connection with Texas and that substantial evidence is available here. As a general matter, the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Under the statute, a court acquires exclusive continuing jurisdiction by virtue of a prior child-custody determi-

nation. TEX. FAM.CODE § 152.202(a). By alleging that the court's prior orders conferred exclusive continuing jurisdiction, Ann satisfied her initial statutory burden. The statute specifically provides that a court *retains* exclusive continuing jurisdiction *until* it determines that the significant-connection and substantial-evidence requirements are no longer met. *Id.* Robert may challenge whether the statutory elements are satisfied, or the court may consider them sua sponte, but Ann has satisfied her initial jurisdictional burden under the statute.

■ Robert contends that the children no longer have a significant connection with Texas because (1) the children visited here only five times in the four-year period preceding this action, and (2) Ann's residence in Texas is not sufficient, as the commentary to section 152.202 specifically notes that the presence of one parent remaining in the state is not determinative. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 152.202 cmt. 1, 9 U.L.A. 674. But Ann does not rely on her mere presence in Texas to establish a significant connection under the statute. Contrary to Robert's briefing, the record indicates that the children actually visited Texas six times in the relevant period. On four of these occasions the children lived with Ann for considerable periods, each lasting approximately one month during the summer. *See Fish v. Fish*, 596 S.E.2d 654, 656 (Ga.Ct.App.2004) (pointing to extended custodial visitation in state to support court's finding of a significant connection); *Ruth v. Ruth*, 32 Kan.App.2d 416, 83 P.3d 1248, 1254 (2004) (same). Moreover, we presume that the trial court accepted as true Ann's testimony that more visitation would have occurred in Texas but for Robert's actions and the fact that the children were not allowed to fly to Texas.

Other courts commonly consider visitation within the state as evidence of a significant connection. *See, e.g., Fish,* 596 S.E.2d at 656; *Ruth,* 83 P.3d at 1254; *In the Interest of P.H.B.S., A.W.L.S., & M.G.S.,* 2–02–195–CV, 2003 WL 22026594 (Tex.App.-Fort Worth, Aug. 26, 2003, no pet.); *Olson v. Olson,* No. C7–02–344, 2002 WL 31056935, at *3 (Minn.Ct.App. Sept.10, 2002) (not designated for publication). In addition, numerous relatives, including Ann's mother and sister and Robert's sister and sister-in-law, live in Texas and maintain a relationship with the children. *See In the Interest of P.H.B.S.; cf. In the Matter of M.B. II v. M.B.,* 195 Misc.2d 192, 756 N.Y.S.2d 710, 712–13 (N.Y.Fam. Ct.2002) (finding that child's relatives could not constitute a significant connection to the state in the absence of a relationship between the child and the relatives).

Moreover, the evidence in this case clearly indicates that Ann maintained a significant relationship with her children. *See* UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202 cmt. 1, 2, 9 U.L.A. 674 ("If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist .... The significant connection to the original decree State must relate to the child, the child and a parent, or the child and a person acting as a parent."); *see also* CONN. GEN.STAT. § 46b–1151 (2003) (altering the language of the UCCJEA to clarify that significant connection refers to the relationship with the remaining parent); *Fish,* 596 S.E.2d at 656 ("Based on [father's] continuous residency, the significant relationship he maintains with his children, and the extended visitation in this State, it cannot be said that neither the children nor the parents in this case have a substantial connection with Georgia."); *Ruth,* 83 P.3d at 1254 (inquiring whether the father's relationship with his children was substantial); Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA),* 75 N.D. L.Rev. 301, 316 (1999) ("[I]f the relationship between the child and the person remaining in the state becomes so tenuous that the court could no longer find a significant connection to the state, jurisdiction would no longer exist."); *cf. In the Matter of M.B. II,* 756 N.Y.S.2d at 712–13 (rejecting assertion that incidental contacts with New York, such as a visit for a cousin's communion, constitute a significant connection with New York). To accommodate the children's schedule over the years, Ann repeatedly flew to Washington, Ohio, and Virginia to see them. Robert admits that Ann made at least fifteen such trips in the four-year period under review. Because the record establishes that the children visited Texas on a number of occasions and maintained a close relationship with their mother and other relatives residing in Texas, all important considerations under the UCCJEA, we hold that the children have a significant connection with Texas sufficient to support the trial court's exclusive continuing jurisdiction over the modification proceedings.

Robert nevertheless claims that the children's contacts with Texas do not rise to the level other Texas courts have required. Specifically, Robert cites *In the Interest of Bellamy,* 67 S.W.3d 482 (Tex.App.-Texarkana 2002, no pet.), and *In the Interest of C.C.B. & M.J.B.,* No. 08–01–00353–CV, 2002 WL 31727247, at *4 (Tex.App.-El Paso Dec.5, 2002, no pet.) (not designated for publication). Those cases, however, do not focus exclusively on the number of times the child has had contact with the state, as Robert suggests. In *Bellamy,* the original child-custody determination

was made in Texas, where the parents were divorced. 67 S.W.3d at 483. The father later sought to modify the custody order, at which time the child's home state was Louisiana. *Id.* Although the child lived in Louisiana with her mother, she attended school daily across the border in Texas, regularly visited her father and his family in Texas, and visited doctors and dentists in Texas. *Id.* at 485. Based on these facts, the trial court determined that section 152.202(a)(1)'s significant-connection element was satisfied. *Id.* But nowhere did the court suggest that this quantum of physical contact was necessary to meet the statutory standard, as Robert contends. Rather, the court emphasized the nature and quality of the child's relationship with the father and family members who resided in Texas. *Id.*

Robert also relies on *In the Interest of C.C.B. and M.J.B.,* in which the court stated that the contacts in *Bellamy* are "the types of significant contacts that might cause a Texas court to retain jurisdiction in Texas even when a child moves from the state." 2002 WL 31727247, at *4. To the extent this statement concerns the nature and quality of the child's contacts with the resident parent, it is consistent with *Bellamy* and the UCCJEA. But insofar as the statement might suggest that such a high level of physical presence in Texas is necessary to satisfy the section 202(a)'s significant-connection standard, we disapprove it. *See also Fish,* 596 S.E.2d at 656; *Ruth,* 83 P.3d at 1254; *In re Dale McCormick,* 87 S.W.3d 746, 751 (Tex.App.-Amarillo 2002, no pet.); *Lord v. Lord,* No. FA970348367S, 2001 WL 1202614, at *3 (Conn.Super. Court. Sept 14, 2001) (not designated for publication).

Robert claims that no other court has exercised exclusive continuing jurisdiction over children who have resided out of state for more than five years. We disagree.

In *Fish,* the Georgia Court of Appeals determined that the trial court had exclusive continuing jurisdiction pursuant to a prior divorce decree even though mother and the children had lived in Florida for seven years. 596 S.E.2d 654. Similarly, in *Ruth,* the Kansas Court of Appeals determined that the trial court had jurisdiction pursuant to a prior divorce decree after the mother and children had lived in Missouri for approximately six years. 83 P.3d at 1254. And in *Heath v. Heath,* a Connecticut court exercised exclusive continuing jurisdiction even though the children had lived in California for eight years. No. FA910117282S, 2000 WL 1838932, at *2 (Conn.Super.Ct. Nov.21, 2000) (not designated for publication). Moreover, contrary to Robert's argument, the UCCJEA does not premise the exclusive continuing jurisdiction determination on which state has the *most* significant connection with the child. *See In re Dale McCormick,* 87 S.W.3d at 750 (stating that "[a]lthough evidence was admitted which establishes that [the child] has significant ties with the state of Kansas, that fact does not necessarily mean that there is no significant connection with Texas or that substantial evidence cannot be found here"). This relative type of inquiry is appropriate under section 152.207, which allows a court with exclusive continuing jurisdiction to decline it in favor of a more convenient forum, but it does not affect the initial section 152.202 jurisdictional analysis. *See* TEX. FAM.CODE. § 152.207. Importantly, the only issue before us is whether the Texas court retained jurisdiction; the court could still decline to exercise that jurisdiction if another forum was more convenient. In this case, though, the children's almost continual change of residence supports the trial court's conclusion that the children had a significant connection with Texas based on their visits here

and their personal. relationships maintained in this state.

Finally, Robert argues that substantial evidence does not exist in Texas regarding the children's care, protection, training, and personal relationships, and section 152.202(a)(1) requires the trial court to find *both* a significant connection with Texas *and* that substantial evidence exists here before it can exercise exclusive continuing jurisdiction. For this proposition, Robert relies upon the court of appeals' statement in *Bellamy* that "Texas retains jurisdiction [under section 152.202(a) ] ... so long as there is still a significant connection with Texas and substantial evidence is still available in Texas." 67 S.W.3d at 484. Robert also cites the commentary to section 152.202, which notes that the original-decree state retains exclusive jurisdiction even if the child has acquired a new home state "so long as the general requisites of the 'substantial connection' jurisdiction provisions of Section 201 are met." UNIF. CHILD CUSTODY JUR. & ENF. ACT § 202 cmt. 1, 9 U.L.A. 674. Because section 201, which governs the initial custody determination, requires both a significant connection and substantial evidence, Robert concludes that section 202 must as well. We disagree.

Robert's strained construction of the statutory scheme ignores section 152.202(a)(1)'s plain language. That section specifically states that jurisdiction continues until the court determines that there is not a significant connection with Texas *and* that substantial evidence concerning the children's care, protection, training, and personal relationships is no longer available here. *See* TEX. FAM.CODE § 152.202(a)(1). Clearly, exclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present.[4] To the extent that *Bellamy* is inconsistent with our holding today, we disapprove it. Because we conclude that the trial court did not err in concluding that the children had a substantial connection with Texas on September 10, 2001, we need not address whether substantial evidence existed here as well.

### III

For the foregoing reasons, we hold that the trial court had exclusive continuing jurisdiction over this modification proceeding and that mandamus relief is justified. *See Geary v. Peavy,* 878 S.W.2d 602, 603 (Tex.1994); *see also* TEX. FAM.CODE § 152.107. Accordingly, we conditionally grant the writ of mandamus and direct the court of appeals to vacate its order directing the trial court to dismiss the case for lack of jurisdiction. The writ will issue

---

**4.** We note that our interpretation comports with that of other jurisdictions. *See Fish v. Fish,* 596 S.E.2d 654, 656 (Ga.Ct.App.2004) (stating that for exclusive continuing jurisdiction to be lost "two findings [no significant connection and no substantial evidence] must be made"); *Ruth v. Ruth,* 32 Kan.App.2d 416, 83 P.3d 1248, 1254 (2004) (affirming trial court's exercise of jurisdiction after determining the children have a significant connection with Kansas); *Benson v. Benson,* 667 N.W.2d 582, 585 (N.D.2003) ("Because [the father] still resides in the state, North Dakota retains exclusive, continuing jurisdiction until a court of this state determines [the child] no longer has a significant connection with the state and the state no longer has substantial evidence concerning [the child]."); *Lord v. Lord,* No. FA970348367S, 2001 WL 1202614, at *3 (Conn.Super.Ct. Sept.14, 2001) (determining that exclusive continuing jurisdiction exists in Connecticut because the child's relationship with the resident parent is significant, even though the court found that substantial evidence is no longer available). But *see In re Marriage of David Medill,* 179 Or.App. 630, 40 P.3d 1087, 1093 (2001) (finding that the trial court would only have continuing exclusive jurisdiction if both requirements were satisfied).

only if the court of appeals does not comply.