# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00681-CV

**Kenneth Scott Mills, Appellant**

**v.**

**Wanda Carol Canoy, Appellee**

## FROM THE COUNTY COURT AT LAW OF BURNET COUNTY
## NO. 21944, HONORABLE WILLIAM R. SAVAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Before the trial court in this case made a child-custody determination in a divorce proceeding, the child moved to North Carolina with his mother. The parents subsequently divorced. In this modification suit filed thereafter by the child's father, we must decide whether significant connections with Texas exist or substantial evidence is available such that the trial court retained exclusive continuing jurisdiction under section 152.202(a)(1) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 152.202(a)(1) (West 2002). Based on the record presented, we hold that the trial court did not err in sustaining the mother's plea to the jurisdiction and declining jurisdiction of the petition to modify.

Appellee Wanda Carol Canoy and appellant Kenneth Scott Mills were divorced in Burnet County, Texas, on December 10, 2003. K.B.M. was the only child born of the marriage. The record shows that K.B.M. was born in July 1989 and lived in California until he moved to Texas,

where he lived for six or seven months. Prior to the divorce, in September 2002, he moved with Canoy to North Carolina. The final decree of divorce provided that the parents were named joint managing conservators of K.B.M. with Canoy having the exclusive right to designate the primary residence of the child without regard to geographic location. The decree also provided that the first visitation between K.B.M. and Mills would occur in North Carolina, with K.B.M.'s counselor, Beth Pugh, present. For any visitation by the child with Mills, Canoy agreed to an exchange of the child in Memphis, Tennessee. Mills agreed to provide a 14-day notice of visitation arrangements by certified mail.

Although the parties disputed visitation rights and access to the child both before and after the divorce, the current dispute arose in June 2004 when Mills filed a petition to modify custody. Canoy responded with a plea to the jurisdiction asserting that the child resided in North Carolina, that he no longer had significant contacts with Texas, and that substantial evidence concerning the child was not available in Texas. After a hearing in July 2004, the trial court granted Canoy's plea to the jurisdiction and declined jurisdiction with respect to custody.

Mills's challenge involves the proper interpretation of section 152.202(a) of the Texas Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which governs the duration of the decree-granting state's exclusive continuing jurisdiction. *Id*. § 152.202(a). That section provides that a court of this state that has made an initial child-custody determination consistent with section 152.201 has exclusive continuing jurisdiction over the determination until

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in

2

> this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

*Id.* Section 152.202(a)(2) does not apply here because Mills continues to reside in Texas. Therefore, we must decide whether the trial court properly applied section 152.202(a)(1) in deciding that it did not have exclusive continuing jurisdiction over these modification proceedings. Because statutory construction is a question of law, we review this matter *de novo*. *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003).

In his petition to modify, Mills contends that the Burnet County court-at-law has continuing, exclusive jurisdiction of the suit. It further recites that "[t]he child the subject of this suit resided in Texas as a result of the acts or directives of [Canoy]." Mills asked that he be appointed the person to designate the primary residence of the child and urged that the requested modification was in the best interest of the child. He also sought a decrease in support payments. On appeal, he urges that the time span between the divorce and his petition for modification is insufficient for the trial court to decline jurisdiction in favor of North Carolina.

In her plea to the jurisdiction, Canoy requested that the trial court decline jurisdiction because K.B.M. had resided in North Carolina since September 2002, had not returned to the State of Texas since that time, and no longer had any connection with Texas. She also urged that substantial evidence or information was no longer available in this state with respect to the child's care, protection, training, and personal relationships. *See* Tex. Fam. Code Ann. § 152.202(a)(1).

3

Under the provisions of the UCCJEA, a Texas court has continuing, exclusive jurisdiction until the decree-granting state determines that either the child no longer has a significant connection with Texas *or* substantial information about the child is not available in Texas. *Id.*; *In re Forlenza*, 140 S.W.2d at 379 ("exclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present"). Thus, jurisdiction terminates if the relationship between the child and the parent remaining in Texas becomes so attenuated that the court can no longer find either significant connections or substantial information. Until the trial court makes such a determination, however, the home state has priority jurisdiction. *In re Forlenza*, 140 S.W.3d at 377-79.

In determining whether a "significant connection" to Texas exists, courts look at the nature and quality of the child's contacts with the parent residing in Texas. *Id.* at 377-78. In *In re Forlenza*, the supreme court concluded that children who had resided with their father in various states outside of Texas for four years maintained significant connections to Texas because they had visited Texas on six occasions, including four month-long summer visits, and had close relationships with the Texas resident mother and other Texas relatives. In *In re Bellamy*, the Texarkana Court of Appeals found a significant connection based on school attendance in Texas and time spent in Texas with the noncustodial parent and other relatives. 67 S.W.3d 482, 484-85 (Tex. App.—Texarkana, no pet.). A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard.[1] Nor does the statute base the jurisdiction determination on which state has *the*

_____

[1] *See In re Forlenza*, disapproving of *In re Bellamy* for suggesting otherwise. 140 S.W.3d 373, 379 (Tex. 2004).

*most* significant connection with the child. A court with continuing, exclusive jurisdiction may decline to exercise it in favor of a more convenient forum, but this does not affect the threshold continuing, exclusive jurisdictional analysis. *In re Forlenza*, 140 S.W.3d at 378.

Under the UCCJEA, a court that has made a child custody determination may modify the determination if it has jurisdiction to make an initial determination under Texas Family Code section 152.201. *See* Tex. Fam. Code Ann. § 152.201 (West 2002). Neither party contests that the court had jurisdiction for the initial custody determination. The relevant date for determining whether a Texas court has jurisdiction to modify its own custody determination is the date the motion to modify is filed. *E.g.*, *In re Forlenza*, 140 S.W.3d at 376; *In re B.A.B.*, 124 S.W.3d 417, 419-20 (Tex. App.—Dallas 2004, no pet.). The relevant inquiry then is whether, at the time Mills filed his motion to modify, K.B.M. had a "significant connection" with Texas or whether "substantial evidence" was available in Texas "concerning [his] care, protection, training, and personal relationships." Tex. Fam. Code Ann. § 152.202(a)(1); *In re Forlenza*, 140 S.W.3d at 379.

The trial court conducted an evidentiary hearing in which Mills testified in person and Canoy testified by telephone. Testimony at the hearing established that K.B.M. has resided in North Carolina since he moved there with his mother in September 2002, before the divorce. Except for a single appearance in court in connection with the divorce proceeding, K.B.M. has not returned to Texas. He attends school and receives medical and mental health care in North Carolina. When Mills was asked what property K.B.M. still maintained in Texas, he testified that Canoy maintained a storage unit containing the child's toys, bedding, and clothes, and that K.B.M.'s computer was still in Texas. Although K.B.M. has a number of paternal relatives in Texas, Mills testified that they had

5

not been in contact with K.B.M. since the divorce. Although a number of medical and psychological records pertaining to K.B.M. and Canoy remained in Texas, the records pertain to care prior to the divorce. Mills testified that he had visited with K.B.M. once in North Carolina since the divorce and had gone to North Carolina two or three times to see him. Mills testified that he had not sent K.B.M. birthday or Christmas cards or presents because he had sent certified letters to Canoy that were returned, and was therefore afraid K.B.M. would not receive his letters or gifts: "They are all here in the state of Texas." In response to a question from his attorney, Mills testified that he believed it was in the child's best interest to keep the case in Burnet County because the court was familiar with the facts and parties.

Canoy testified that she and K.B.M. moved to North Carolina at the end of September 2002. They lived with Canoy's parents when they first arrived in North Carolina. Canoy testified that K.B.M. has been attending the same school and has received regular and continuous counseling since arriving in North Carolina. He continues to see counselor Beth Pugh two to three times a month. K.B.M. also sees a psychiatrist. All of his medical and mental health treatment and care since the divorce have occurred in North Carolina; as a result, all of the relevant records are maintained in North Carolina. Canoy testified to K.B.M.'s extracurricular activities, friendships, church activities, all of which take place in North Carolina. Canoy testified that since the divorce all evidence regarding K.B.M.'s care, training, protection, and personal relationships has been in North Carolina and none in Texas. She testified that calls from his father were minimal; that K.B.M.

6

had received no cards, letters, or gifts from Mills since January 2003;[2] and that K.B.M. had never received such items from any of his Texas family members. She testified that on the occasion she received a certified letter from Mills requesting visitation and an exchange in Memphis, Tennessee, as provided in the decree, the letter did not specify a time or verify a location.

In urging the court to find Canoy responsible for any lack of visitation, at the hearing Mills's attorney argued: "The best evidence is this Court, the orders of this Court and the understanding of what this Court wanted. You, Your Honor, are the best evidence in this situation because you are the most familiar with the parties, most familiar with what you wanted, most familiar with their conduct and behavior." Both parents testified to acts by the other to alienate the child's affection or to limit access to the other. The trial judge urged both parents to forego gamesmanship in favor of the child's emotional needs at a critical time in his life. Although Mills urged that Canoy thwarted visitation, Canoy argued that Mills had asked for visitation but failed to comply with the procedures specified in the divorce decree. Scolding both parents for their lack of cooperation and failure to abide by the divorce decree, the court found that K.B.M. no longer has significant contacts or connections with Texas, and that significant information regarding the child was available in North Carolina and was no longer available in Texas.

The trial court conducted a careful hearing and was fully familiar with the parties, the divorce decree, and the intervening facts. From this evidence, we conclude that the trial court did not err in concluding that the child no longer maintained a "significant connection" with Texas when

---

[2] Canoy acknowledged that, when she and K.B.M. first arrived in North Carolina in 2002, K.B.M. received cards and gifts at Thanksgiving and Christmas; he also received a gift for his birthday in 2003.

7

Mills filed the motion to modify, that Texas no longer has substantial evidence concerning the child, and that Texas should cede jurisdiction to North Carolina. We hold that the trial court properly granted Canoy's plea to the jurisdiction.

We overrule Mills's issue and affirm the judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 25, 2005