

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00085-CV
_____

IN RE C.M.B.H., A CHILD

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

In this original proceeding, the parents of C.M.B.H., a child,[1] have petitioned this Court for a writ of mandamus directing the Honorable Will Biard, judge of the 62nd Judicial District Court of Lamar County, Texas, to vacate the court's temporary order of June 14, 2023, granting Grandmother managing conservatorship with the right to designate the primary residence of C.M.B.H. in the absence of a finding that either parent was unfit. We conditionally grant the petition.[2]

## I.      Background

On May 25, 2023, Grandmother filed a petition asking the trial court to appoint her as C.M.B.H.'s sole managing conservator. Grandmother also requested a temporary restraining order asking the court to enjoin Mother from the following:

> a.      Disturbing the peace of the child or of another party.
>
> b.      Withdrawing the child from enrollment in the school or day-care facility where the child is presently enrolled.
>
> c.      Hiding or secreting the child from Petitioner.
>
> d.      Making disparaging remarks regarding Petitioner or Petitioner's family in the presence or within the hearing of the child.
>
> e.      Consuming alcohol within the 24 hours before or during each of Respondent's periods of possession of or access to the child.

---

[1]Because this matter involves a suit affecting the parent-child relationship, we refer to the parents and grandmother as such to protect the privacy of the minor child. *See* TEX. R. APP. P. 9.8.

[2]In her response, Grandmother argues that the petition should be denied because counsel's verification does not comply with the Texas Rules of Appellate Procedure. Even though perjury cannot be assigned to the verification, the record is nevertheless properly verified. Each page of the record purporting to be a part of the clerk's record has been properly certified by the district clerk of Lamar County, Texas. That portion of the record that purports to be the hearing record has been properly certified by the court reporter.

> f. Canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time this suit was filed of, any health or dental insurance policy insuring the child.

Grandmother further asked the court to grant her exclusive custody and possession of C.M.B.H. until such time as a hearing could be held and alleged, "[T]he child will be and is in immediate danger to [her] health and welfare and . . . will suffer irreparable harm if access to the child by [Mother] is not prohibited."

In support of her petition, Grandmother explained in an affidavit that C.M.B.H. had lived with her for the past two years and that she was C.M.B.H.'s caretaker. Grandmother stated in her affidavit that C.M.B.H. was four and one-half years old and that Mother "never had possession of [C.M.B.H.] for more than a period of 72 hours at one time." Grandmother explained that, on May 7, 2023, Mother picked up C.M.B.H. for what Grandmother believed would be an overnight visit, but Mother did not return C.M.B.H. to Grandmother. According to Grandmother, Mother also removed C.M.B.H. from school. C.M.B.H.'s maternal aunt (Aunt) also attached her affidavit in support of Grandmother's petition, stating that C.M.B.H. lived with Aunt "for the first two years of [C.M.B.H.'s] life" before Grandmother took over C.M.B.H.'s care.

On May 26, 2023, the trial court issued a temporary restraining order in accordance with Grandmother's request for sole custody of C.M.B.H.[3] A hearing was set for June 5, 2023, and was continued to June 14, 2023.

---

[3]The order also enjoined Mother from engaging in each of the activities listed in the petition.

3

In the meantime, Mother filed a counterpetition stating that Father was entitled to citation as C.M.B.H.'s father. Mother asked the court to appoint her and Father as joint managing conservators, with Mother having the exclusive right to designate C.M.B.H.'s primary residence and to enroll her in school. On June 13, 2023, Father intervened, asking the court—in the absence of an agreement—to appoint Father as the conservator with the exclusive right to designate C.M.B.H.'s primary residence and to enroll her in school. In his supporting affidavit, Father stated that, since her birth, C.M.B.H had visited his home in Hughes Springs, as well as his parents' home in Daingerfield.[4] Grandmother knew Father, who attended C.M.B.H.'s second birthday party. Father's parents were also at the party.

At the temporary hearing, Grandmother testified that C.M.B.H. had lived with her for over two and one-half years. C.M.B.H. had also spent time with Mother, as Mother would take C.M.B.H. on the weekends two or three times a month. Before May of 2023, Mother never had possession of C.M.B.H. for more than seventy-two hours. On May 7, Mother took C.M.B.H. home from a baseball game and did not return her to Grandmother as she customarily did on Sunday evening.[5] C.M.B.H. was with Mother three weeks until she was returned to Grandmother under the temporary restraining order.

Grandmother testified that Mother was unable to provide for C.M.B.H. and that she had to help Mother with money and food and in taking C.M.B.H. to the doctor. Grandmother was very concerned that Mother had been smoking marihuana. She testified, though, that she had no

---

[4]Father stated that he wanted to be judicially declared C.M.B.H.'s father and have his name added to her birth certificate.

[5]Mother texted Grandmother on that Sunday and told her she was keeping C.M.B.H.

4

problem with Mother and Father having visitation but wanted to make sure C.M.B.H. remained stable and "that this [could] be worked into for [C.M.B.H.'s] best interest."

When asked how placement with Father would impair C.M.B.H.'s emotional, physical, and mental well-being, Grandmother responded that C.M.B.H. was "not used to being with them all the time." She continued, "She has seen them on occasion." Grandmother did not want C.M.B.H. "to be yanked up and not [to] be around some of the people that [she had] known for four and a half years." When asked what significant impairment would befall C.M.B.H. if she were raised by her parents, Grandmother simply stated that C.M.B.H. did not "know either one of them that good." Grandmother did not mind if C.M.B.H. went with them on the weekends, but not more than that, because Grandmother wanted stability for C.M.B.H.

Aunt testified that she took care of C.M.B.H. for "the first two years of her life." Aunt kept C.M.B.H. from the time Mother would go to work in the late afternoon until Mother got off from work at midnight. Sometimes Mother did not come for C.M.B.H. until 7:30 a.m. the following day.

Aunt testified, without objection, that Mother told her that she smoked marihuana during her most recent pregnancy. Aunt also testified that she was with Mother at the doctor's office when Mother told the doctor about "her mental issues." Unfortunately, Mother was not given the opportunity to testify at the hearing due to the trial court's time constraints.

After having heard this evidence, the trial court appointed Grandmother as temporary managing conservator and named both parents possessory conservators. In making this determination, the court stated:

5

The Court is going to appoint [Grandmother] as temporary sole managing -- temporary managing conservator. Both parents will be possessory conservators.

I'll tell the parents, here is my issue, the grandmother and the aunt have raised this kid for four and a half years, so that's why they're getting to keep the kid today. If y'all want to step up and start raising your child, I'm going to give you the opportunity. When we come back, it will be a whole new ballgame if you've shown me that you can raise this child. It's not their job to raise [C.M.B.H.]. It's y'all's job to raise your daughter.

After having made this ruling, the trial court granted Father visitation on the first and third weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The trial court granted Mother visitation on the second and fourth Saturdays from 9:00 a.m. until 6:00 p.m. The court ordered the exchange to take place in Paris, Texas, where Grandmother resided. In so concluding, the court reasoned that the parents could "get in the car and put forth the effort and come and show [the court] that they're wanting to take care of their daughter."

## II. Mandamus Standard

"We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding) (citations omitted). Courts have long recognized the propriety of granting mandamus relief in the context of child-custody proceedings. *See In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding) (finding mandamus relief available where trial court's temporary order divested fit parent of possession of child because "divestiture is irremediable"); *see In re Crumbley*, 404 S.W.3d 156, 161 (Tex. App.—Texarkana 2013, orig. proceeding) (finding mandamus relief available where trial court appointed grandmother and aunt "as temporary joint managing conservators with [mother]

6

having the right to establish child's primary residence" (footnote omitted)); *Powell v. Stover*, 165 S.W.3d 322, 323 (Tex. 2005) (orig. proceeding) (finding mandamus relief available when simultaneous custody proceedings ongoing in different states); *In re Forlenza*, 140 S.W.3d 373, 379 (Tex. 2004) (orig. proceeding); *In re Lau*, 89 S.W.3d 757, 759–60 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).

"In determining whether to grant mandamus relief, an appellate court should defer to the trial court's factual determinations supported by the record." *In re C.J.C.*, 603 S.W.3d at 811 (citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)). Consequently, we may not "set aside the trial court's finding unless it is clear from the record that the trial court could only reach one decision." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam) (orig. proceeding) (citing *Walker*, 827 S.W.2d at 839). We may also "grant mandamus relief if the trial court 'fails to correctly analyze or apply the law.'" *In re C.J.C.*, 603 S.W.3d at 811 (quoting *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (per curiam) (orig. proceeding)).

## III.    Analysis

"In *Troxel v. Granville*, [530 U.S. 57 (2000) (plurality op.),] the United States Supreme Court held unconstitutional a trial court's order requiring a fit parent to permit visitation with her children's grandparents." *In re C.J.C.*, 603 S.W.3d at 807. "The Court recognized that the United States Constitution 'protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" *Id.* (quoting *Troxel*, 530 U.S. at

7

66). "To protect that right, a plurality in *Troxel* applied 'a presumption that fit parents act in the best interest [sic] of their children.'" *Id.* (quoting *Troxel*, 530 U.S. at 68).

Likewise, "[t]he presumption that the best interest of the child is served by awarding custody to the parent is deeply embedded in Texas law." *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) (citing *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990)). "The government may not 'infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better decision" could be made.'" *In re C.J.C.*, 603 S.W.3d at 807 (quoting *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam) (orig. proceeding)). This is because "constitutional infirmity . . . can result when a court's best-interest determination overrides the expressed desires of a fit parent." *Id.* at 817. "Accordingly . . . a court must apply the presumption that a fit parent—not the court—determines the best interest of the child in any proceeding in which a nonparent seeks conservatorship or access over the objection of a child's fit parent." *Id.*

Here, Mother and Father contend that the trial court abused its discretion by entering a temporary order naming Grandmother as the managing conservator with the right to designate C.M.B.H.'s primary residence in opposition to their expressed desires. More particularly, Mother and Father complain that Grandmother failed to meet her burden to prove that either parent is unfit. The trial court's ruling does not contain any explicit findings that either parent is unfit.

"A parent shall be appointed as sole managing conservator, or the parents as joint managing conservators, unless the court finds the appointment would not be in the best interest

8

of the child *because* it would significantly impair the child's physical health or emotional development." *In re Crumbley*, 404 S.W.3d at 161 (emphasis added) (citing TEX. FAM. CODE ANN. § 153.131(a)). Under Section 153.131(a), a nonparent must overcome the fit-parent presumption as to both parents to be appointed as a child's conservator. *Id.* at 161 n.3. Section 153.131(b) provides, "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE ANN. § 153.131(b).[6] The trial court made no finding on this issue.

"[T]he parental presumption may also be rebutted if the court finds that the parent has voluntarily relinquished actual care, control, and possession of the child to a nonparent for a period of one year or more, a portion of which was within ninety days preceding the date of filing suit," as Grandmother argues in this case. *In re Crumbley*, 404 S.W.3d at 162 (citing TEX. FAM. CODE ANN. § 153.373). The trial court made no finding on this issue.

We have previously stated that "[a] trial court's conclusion that the parental presumption has been rebutted must be supported by specific findings of fact identifying the factual basis for the finding, and the failure to make such findings constitutes error." *Id.* at 161. In *In re Crumbley*, though, we recognized that, because no findings were requested or filed, the trial court made "all findings necessary to support its judgment." *Id.* at 162 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). As in *In re Crumbley*, we recognize that the trial court here made implicit findings in support of its judgment.

---

[6]The statute specifically provides, "A finding of a history of family violence involving the parents of a child removes the presumption under this subsection." TEX. FAM. CODE ANN. § 153.131(b). There were no allegations and no evidence that Mother and Father, or either of them, engaged in family violence or had a history of family violence.

*In re Crumbley* was factually similar to this case. In that case, the child's aunt and the child's mother (Crumbley) were appointed "temporary joint managing conservators with [mother] having the right to establish the child's primary residence." *Id.* at 158 (footnote omitted). Crumbley filed a petition for a writ of mandamus asking this Court to set aside the temporary order because the trial court failed to find that Crumbley's appointment "as sole managing conservator would significantly impair the child's physical health or emotional development." *Id.* at 161. We observed, "[M]any of the provisions in this judgment negate and conflict with a 'deemed' finding that the appointment of Crumbley would not be in the child's best interest and that such appointment would significantly impair the child's physical health or emotional development." *Id.* at 162. Those provisions included the appointment of Crumbley as a joint managing conservator with the right to determine the child's primary residence. *Id.* We concluded that the trial court would not have made such appointment if it believed "that the child's health or development would be significantly impaired." *Id.*

We further determined that the evidence was insufficient to show "Crumbley's relinquishment of the care, control, and possession of the child for any one-year period, any part of which was within the . . . ninety days preceding the date of filing suit." *Id.* As a result, we conditionally granted the petition for a writ of mandamus, which we shall do in this case as well.

### A.    Significant Impairment of Physical Health or Emotional Development

The evidence at trial showed that, while Mother was working, Aunt cared for C.M.B.H. during the first two years of her life. Mother would pick her up after work, or sometimes the next day, and Aunt was inconvenienced and unhappy about Mother's late arrivals. While

10

C.M.B.H. lived with Grandmother, Mother would take C.M.B.H. on the weekends two or three times a month. In May, Mother cared for C.M.B.H. for three weeks before she was obliged to return the child to Grandmother under the trial court's restraining order. The evidence showed that Mother and Father attended C.M.B.H.'s ball games, and Father and his parents attended C.M.B.H.'s birthday party. C.M.B.H. had visited Father's home and had visited her grandparent's home in Daingerfield. Father had a stable job, stable housing, and a strong support system. While there was some evidence suggesting that Mother smoked marihuana and had problems with depression, those statements were never addressed by Mother, who could not testify due to time constraints.

At the hearing, it was apparent that Grandmother's primary concern was that C.M.B.H. not be completely removed from her for the sake of the child's stability. When asked if she could describe "how it would be injurious and harmful to [C.M.B.H.] that would . . . significantly impair her emotional, physical, and mental well-being to be placed with" Father, Grandmother only stated that C.M.B.H. was "not used to being with them all the time." Again, when asked what significant impairment would result to C.M.B.H. if she were raised by her parents, Grandmother stated that C.M.B.H. did not "know either one of them that good." Grandmother never stated that Mother or Father were unfit parents; instead, she believed C.M.B.H. needed bonding time with her parents.

It is also apparent from the trial court's remarks at the conclusion of the hearing that it named Grandmother as managing conservator because "grandmother and the aunt [had] raised this kid for four and a half years." The court continued, "[S]o that's why they're getting to keep

11

the kid today." The court also noted, "If y'all want to step up and start raising your child, I'm going to give you the opportunity." *See In re B.A.B.*, No. 07-21-00259-CV, 2022 WL 1687122, at *6 (Tex. App.—Amarillo May 6, 2022, orig. proceeding) (mem. op.) (conditionally granting petition when "trial court's decision was based on encouraging [f]ather to 'step up' to bonding with [daughter,] and 'we are going to move toward he being the person to determine the primary residence'").

As in *In re Crumbley*, the trial court's order "negates any 'deemed' finding that the appointment" of Mother and Father "would not be in [C.M.B.H.'s] best interest and that such appointment would significantly impair [C.M.B.H.'s] physical health or emotional development." Since the trial court appointed Mother and Father as possessory conservators with the right of visitation, we do not deem that the trial court concluded that such appointments would not be in C.M.B.H.'s best interest or that C.M.B.H.'s health or development would be significantly impaired. *See In re Crumbley*, 404 S.W.3d at 162. We conclude that Grandmother failed to rebut the parental presumption by showing that appointment of the parents as joint managing conservators would not be in the best interest of C.M.B.H. because it would significantly impair C.M.B.H.'s physical health or emotional development.

### B. Voluntarily Surrender of Possession

Grandmother contends that Mother and Father voluntarily surrendered possession of C.M.B.H. to Grandmother. Section 153.373 of the Texas Family Code states,

> The presumption that a parent should be appointed or retained as managing conservator of the child is rebutted if the court finds that . . . the parent has voluntarily relinquished actual care, control, and possession of a child to a

> nonparent . . . for a period of one year or more, a portion of which was within 90 days preceding the date of intervention in or filing of suit.

TEX. FAM. CODE ANN. §153.373(1) (Supp.).

The ninety-day, pre-suit period ran from February 24, 2023, through May 25, 2023.[7] The record is clear that Mother cared for C.M.B.H. two or three weekends every month. The record is also clear that C.M.B.H. was with Mother from May 7, 2023, for approximately three weeks. This evidence negates any claim that Mother voluntarily relinquished the care, control, and possession of C.M.B.H. during the relevant time. As for Father, there was no evidence in the record on the precise issue of Father's possession of the child during the relevant time. As a result, the trial court could not have implicitly determined that Father voluntarily relinquished actual care, control, and possession of C.M.B.H. during the relevant time. The evidence on this issue as to both parents is insufficient to overcome the parental presumption.

### C.  Parents Did Not Forfeit Their Right to Petition for a Writ of Mandamus

The hearing took place on June 14, 2023. The petition for a writ of mandamus was filed in this Court on October 19, 2023, resulting in an approximate four-month lapse. Grandmother argues that the petition should be denied because of the delay in its filing. Grandmother claims that she has incurred significant costs in caring for C.M.B.H. during those four months that she would not have otherwise incurred if the petition had been filed sooner.

The case Grandmother relies on to support her position, *In re E.S.*, 07-19-00323-CV, 2019 WL 7342242, at *1 (Tex. App.—Amarillo Dec. 30, 2019, orig. proceeding) (per curiam)

---

[7]Even if we were to use July 13, 2022 (date of original petition), as the date suit was filed, the same analysis applies. There is nothing in the record to indicate that either Mother or Father relinquished actual care, control, and possession of the child to a nonparent for a period of one year or more, a portion of which was within ninety days of July 13, 2022.

(mem. op.), is easily distinguished. In that case, E.S. petitioned for a writ of mandamus seeking to vacate the trial court's order denying his application for a writ of habeas corpus seeking to gain possession of his two children after their mother died. The trial court found that E.S. consented to the relinquishment of possession and control of the children for at least six months before seeking habeas relief. In addition, the trial court determined that a serious question existed regarding the welfare of the children if relief were granted. Although the application was denied for several reasons, the court determined that E.S. slumbered on his rights in waiting four months to file the petition. In that case, though, the trial court appointed grandmother temporary managing conservator after denying habeas relief and before E.S. filed his petition. Here, Mother was in possession of C.M.B.H. and was required to return the child to Grandmother under the trial court's order, at the behest of Grandmother.

Grandmother asked for and received managing conservatorship of C.M.B.H. knowing there would be costs involved. The trial court named Grandmother as managing conservator at her request. Grandmother now points to the costs of caring for C.M.B.H. during the four-month period as a basis to preclude mandamus relief. Grandmother's appointment did not happen during the four-month period, as was true in *In re E.S.* This appointment, rather, precipitated the expenses of which Grandmother now complains. Further, the trial court ordered both parents to pay Grandmother child support based on the guidelines of minimum wage. Under these facts, we cannot say that Mother and Father forfeited their right to petition for mandamus relief.[8]

---

[8]Grandmother also argues that this Court is precluded from granting mandamus relief because the identity of C.M.B.H.'s father was disputed in the trial court. "[A]n appellate court may not deal with disputed areas of fact in a mandamus proceeding." *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978) (orig. proceeding); *see In re Vaishangi, Inc.*, 442 S.W.3d 256, 260 (Tex. 2014) (per curiam) (orig. proceeding). In the trial court, Grandmother testified that

## IV.    Conclusion

The trial court did not find that either parent was unfit or voluntarily surrendered possession of C.M.B.H. during the relevant time.  Further, the evidence does not support the rebuttal of the parental presumption on either basis.  We, therefore, conditionally grant the petition for a writ of mandamus.  We trust that the 62nd Judicial District Court of Lamar County, Texas, will vacate the court's temporary order of June 14, 2023, granting Grandmother managing conservatorship with the right to designate the primary residence of C.M.B.H.  The writ will issue only if the trial court fails, within twenty days of the date of this opinion, to take appropriate action in accordance with this opinion.


Scott E. Stevens
Chief Justice


Date Submitted:     November 17, 2023
Date Decided:       November 20, 2023

---

she did not know for sure whether Father was C.M.B.H.'s father.  Neither the trial court nor any party before the trial court took the position that Father was not C.M.B.H.'s father, and this issue was not argued before the trial court.  In fact, the trial court referred to Father as "the father" during the hearing.  We do not believe this statement created a disputed fact issue for the trial court to resolve.