**Opinion issued December 29, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00296-CV

————————————

**HECTOR CORTEZ, Appellant**

**V.**

**VERONICA GARZA CORTEZ, Appellee**

On Appeal from the 505th District Court
Fort Bend County, Texas
Trial Court Case No. 12-DCV-199184

# O P I N I O N

This is a suit affecting the parent-child relationship (SAPCR). Appellant, Hector Cortez, and appellee, Veronica Garza Cortez, were divorced in 2013, and the divorce decree required that the primary residence of their minor children was to be

in Fort Bend County, Texas, as of August 1, 2014. In 2015, Hector filed a motion for enforcement of the divorce decree, seeking an order that Veronica return the children from where they had been living with her in Mexico, and a motion to modify the parent-child relationship to grant Hector the right to designate the primary residence of the children. The trial court declined to exercise jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). In five issues, Hector argues that (1) the trial court failed to correctly construe the "home state" provision of the UCCJEA; (2) the trial court erred by not concluding that Texas had initial child custody jurisdiction; (3)–(4) the trial court erred by concluding that Texas had lost continuing exclusive jurisdiction, a conclusion that was not supported by the record; and (5) the trial court abused its discretion when it declined to hear Hector's motion for enforcement of the geographical restriction.

We affirm.

### Background

Hector and Veronica married in 2001 and had two children: a son born in 2004 and a son born in 2009. Both children were born in Texas.

In June 2012, Hector filed for divorce in Fort Bend County, Texas. In August 2012, Veronica and the children moved to Monterrey, Mexico. On January 22, 2013, the trial court signed an agreed final divorce decree. The agreed divorce decree named Hector and Veronica as joint managing conservators of the children and

2

granted Veronica the exclusive right to designate the primary residence of the children, "subject to the geographic restrictions as stated more particularly herein." The decree included the following provision:

> IT IS ORDERED that the primary residence of the children shall be Fort Bend County, Texas beginning on August 1, 2014. The parties acknowledge and agree that the children are currently living in Monter[r]ey, Mexico with Veronica Garza De Cortez. The parties have further agreed and IT IS THEREFORE ORDERED that the children shall return to Fort Bend County, Texas to live on or before August 1, 2014. Veronica Garza De Cortez is ORDERED to return the children to Fort Bend County, Texas on or before August 1, 2014 for the purpose of designating the permanent residence of the children in Fort Bend County, Texas for all times thereafter. Beginning August 1, 2014 the parties shall not remove the children from Fort Bend County, Texas for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

The decree stated that the "Home State" of both children was Texas. The decree also included a Standard Possession Order addressing Hector's periods of possession of the children, including provisions for extended periods of possession during the summer. The agreed divorce decree obligated Hector to pay child support and contractual alimony, and it obligated him to pay for health insurance coverage for the children.

On April 21, 2015, Hector filed a petition to modify the parent-child relationship in the Fort Bend County court. This petition recited that the court had "continuing, exclusive jurisdiction," stated that the children's "County of residence" was Fort Bend County, and stated that Veronica was a "nonresident of Texas." In

this filing, Hector stated his belief that the parties would enter into an agreement concerning modification of possession of and access to the children and modification of child support requirements. Hector requested that the trial court make a finding concerning whether a risk of international child abduction by Veronica existed, and he requested that the trial court enter several temporary orders, including an order granting him the exclusive right to designate the primary residence of the children, restricting the residence of the children to Fort Bend County, enjoining Veronica from removing the children from a designated geographic area, and requiring Veronica to surrender the children's passports. The trial court signed temporary orders but did not make a finding concerning the risk of international child abduction.

That same day, Hector filed a "Motion for Enforcement of Possession or Access." In this motion, Hector alleged that Veronica had failed to comply with the agreed divorce decree, specifically, the provisions requiring her to return to Fort Bend County with the children by August 1, 2014, and to establish the children's primary residence within Fort Bend County. Hector alleged that Veronica had also failed to comply with the agreed divorce decree "by failing to surrender the children" to him on two or more occasions. He filed a supporting affidavit in which he averred that Veronica had not returned to Fort Bend County "even for a short period of time," and as a result, he had not seen his children "in over a year." He requested that the

4

trial court hold Veronica in contempt and that he be allowed additional periods of possession "to compensate for those periods denied by [Veronica]." The trial court ordered Veronica to appear before the court and respond to Hector's motion.

In response to Hector's motions, Veronica filed a plea to the jurisdiction, a request for the trial court to decline jurisdiction under the UCCJEA, and an original answer. Veronica alleged that the court no longer had continuing exclusive jurisdiction because neither the children nor Veronica had a significant connection to Texas and there was no substantial evidence in Texas concerning the children's care, protection, training, and personal relationships. She argued that Mexico was the children's "home state," that Texas did not have jurisdiction to make an initial child custody determination, that Texas did not have emergency jurisdiction over the children, and that the court, therefore, lacked the power to modify the agreed divorce decree. She further argued that, if the court found that it did have continuing exclusive jurisdiction, the court should decline to exercise its jurisdiction because Texas is an inconvenient forum, and Monterrey, Mexico, is a more appropriate forum. Veronica also filed a counter-petition to modify the agreed divorce decree, subject to her plea to the jurisdiction. In this counter-petition, Veronica requested, among other things, "that the residence of the children be restricted to no lesser area than the state of Texas and Monterrey, Mexico."

Veronica attached an affidavit to her counter-petition to modify. She averred that she and the children had lived in Monterrey, Mexico, since September 2012, and that they moved there at Hector's request after he had filed for divorce. She averred that the last time Hector had seen the children in person was in Texas in January 2013 when the divorce decree was signed and that he had not visited them in Mexico because he told her that he had "some issue with his passport." She also averred that Hector travels extensively for work—sometimes up to three weeks per month—and he occasionally travels outside of the United States. Veronica stated that Hector's mother lived close by in Monterrey, but she rarely saw the children, even though Veronica invited her to family events. She averred that Hector rarely answers when she calls him and that he primarily communicates with the children through their gaming console. She averred that, at the time Hector filed his modification petition, Hector had not spoken with the children in three months.

Veronica averred that Hector had only sent the children Christmas presents once in over two years and that he had never sent any birthday presents. She stated that after she and the children moved to Monterrey in September 2012, Hector had never requested that she bring the children to the airport for any possession periods until he emailed her with a request in June 2015 to spend the month of July 2015 with the children in Houston. Veronica agreed, but Hector never responded to confirm travel arrangements.

Veronica also averred that she had since remarried and she had been pregnant during the summer of 2014, when she was supposed to move back to Fort Bend County, as provided for in the divorce decree. Veronica had medical complications during this pregnancy, and she averred that she discussed those problems with Hector and that he agreed she and the children did not have to move back to Texas, but could stay in Mexico through 2014. Veronica averred that she was currently pregnant but again had health complications and could not fly to Texas for court proceedings. She further averred that Hector had stopped paying his spousal maintenance payments and had removed the children from his health insurance. She stated that the children were covered through her husband's health insurance, but they would lose that coverage if they moved to the United States, as would her husband, who has a brain tumor. She stated that the children attend a "very reputable private school" in Monterrey free of charge because she works there. Veronica averred that removing the children from her care would present a danger to the children's "emotional health, safety and welfare and mental well-being," noting that they had not spent any time with Hector in over two years and that Hector travels frequently for his job.

In February 2016, while his earlier-filed motions were still pending before the trial court, Hector filed a "Motion for Determination of Wrongful Retention." In this motion, Hector stated that he intended to file an application for return of the children

from Mexico pursuant to the Hague Convention on Civil Aspects of International Child Abduction (Hague Convention) and the federal International Child Abduction Remedies Act (ICARA). Hector argued that the children's habitual residence was Texas: the children were born in Texas and they lived in Texas until August 2012, when Veronica moved with the children to Monterrey. Hector argued that he and Veronica intended for the children to live in Mexico on a temporary basis, and he did not agree to "the permanent change of residence of the children from Texas to Mexico." Hector argued that he had rights of custody to the children pursuant to the agreed divorce decree, which named him as a joint managing conservator and awarded him possession rights under a Standard Possession Order. He further argued that he was exercising his custody rights at the time of the children's removal from Texas "and would continue to be exercising those rights but for [Veronica's] retention of the children in Mexico and interference with [Hector's] maintaining contact with them." Hector argued that the trial court retained continuing exclusive jurisdiction over the children, and he requested that the court determine that Veronica had wrongfully removed the children from Texas, their habitual residence, and had wrongfully retained the children in Mexico in violation of the agreed divorce decree.

In March 2016, Veronica filed suit in Mexico seeking termination of Hector's parental rights to the children. Veronica alleged that the parties agreed, in the agreed

divorce decree, that she would establish her domicile in Monterrey. She also alleged that Hector agreed that he would pay travel expenses for the children's visitation and that he would include the children on his health insurance, but he did not comply with either requirement. She alleged that, after the divorce, Hector had not seen the children or had parenting time with them and that he had abandoned the children. She therefore sought termination of Hector's parental rights.[1] In this petition, Veronica did not make any allegations that Hector had engaged in domestic violence against her or against the children, and there is no evidence of domestic violence in the appellate record.

In Mexico, Hector filed an application for return of the children under the Hague Convention in May 2016. The presiding judge in that proceeding ordered Hector to inquire if the Fort Bend County trial court would issue a determination on whether the removal or retention of the children was wrongful, as it was allowed to do before the Mexican court ruled on the merits of the Hague Convention proceeding. At Hector's request, the Fort Bend trial court agreed to make this

---

[1]    In filings in the trial court, Hector asserted that this proceeding in Mexico was dismissed on June 22, 2018. The appellate record contains a copy of Veronica's original petition and an order transferring venue to another court in Mexico, but it does not contain an order or judgment dismissing the proceeding. The record does contain an email exchange between the trial court and the Mexican court which includes an email from the judge of the Mexican court that references June 22, 2018, but this email is in Spanish and no English translation of this email is contained in the record.

determination. On December 6, 2016, the Fort Bend trial court determined that "the retention of the children in Mexico by their mother, Respondent Veronica Garza, on August 1, 2014, breached the child custody rights of Hector Xavier Cortez, pursuant to the [Hague] Convention Article 3." The appellate record does not indicate that the proceeding under the Hague Convention in Mexico has been resolved. The record contains evidence reflecting that Veronica filed an "amparo" proceeding in Mexico in December 2016 that had the effect of staying resolution of the Hague Convention proceeding.

However, on August 21, 2018, the Fort Bend trial court issued a ruling declining to exercise jurisdiction over the case. Hector filed a motion for reconsideration of this ruling, arguing that the trial court had abused its discretion by declining jurisdiction and that it had erred in finding that Texas was an inconvenient forum because Veronica had engaged in unjustifiable conduct to create jurisdiction in Mexico.

On November 20, 2018, the Fort Bend trial court signed an order informing the parties and the court in Mexico hearing Veronica's suit against Hector that it declined jurisdiction "as it pertains to modification of the Parent-Child Relationship, further defined as possession and access, rights and duties and conservatorship," but that it retained jurisdiction "as to matters pertaining to child support enforcement

10

and modification."[2] This order stated, "Jurisdiction concerning the enforcement of possession and access is under advisement." Hector filed a motion for reconsideration of this order as well.

The Fort Bend trial court signed another order declining jurisdiction over the case—but retaining jurisdiction over child support matters—on April 10, 2019. This order cited Texas Family Code section 152.202(a)(1) as the basis for declining jurisdiction. The court issued findings of fact and conclusions of law in support of its rulings. The Fort Bend trial court found, among other findings, that Veronica and the children had moved to Mexico in September 2012 and had lived there continuously ever since; that Veronica and Hector had agreed that the children could continue to live in Mexico until August 1, 2014, and that the trial court had ordered the children to return by that date; Hector had attempted to exercise visitation at least seven times from 2013 through 2017, but this "was not facilitated by" Veronica; Hector had "maintained a relationship with the children before, during and after the [d]ivorce proceedings";[3] and the trial court had previously found that Veronica's

---

[2] At the hearing on the entry of this order, the trial court stated, "I'm not calling witnesses from Mexico to come here and testify. That's why I've declined jurisdiction. . . . They've been there a long time."

[3] With respect to the findings that Veronica did not facilitate Hector's attempts at exercising visitation and that Hector maintained a relationship with the children, the trial court expressly stated that these findings were based on evidence Hector attached to a brief in support of the trial court's retention of jurisdiction, specifically, email exchanges between Hector and Veronica, and pictures of Hector with the children before the divorce and on two court-ordered periods of visitation that

retention of the children in Mexico after August 1, 2014, breached Hector's custody rights under the agreed divorce decree. The court concluded that "neither the child[ren], nor the child[ren] and one parent, nor the child[ren] and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in the state concerning the child[ren's] care, protection, training and personal relationships."

This appeal followed.

## Jurisdiction Under the UCCJEA

In five issues on appeal, Hector challenges the trial court's orders ruling that it does not have exclusive continuing jurisdiction over Hector's modification and enforcement petitions. In his first two issues, Hector contends that the trial court did not correctly construe the "home state" provision and erroneously concluded that Texas did not have jurisdiction to make an initial child custody determination. In his third and fourth issues, he contends that the trial court erred by concluding that it lacked exclusive continuing jurisdiction because this conclusion was not supported by evidence in the record. Finally, in his fifth issue, Hector argues that the trial court erred by not hearing his motion for enforcement of the geographical restriction contained in the agreed divorce decree. As part of this issue, Hector argues that the

---

occurred in 2016. The record also included evidence that Veronica sent the children to Texas for court-ordered visitation with Hector on two occasions: for a week in March–April 2016 and for a month during the summer of 2016.

trial court erred to the extent it declined jurisdiction because Texas was an inconvenient forum.

## A. Standard of Review and Governing Law

Whether a trial court has jurisdiction under the UCCJEA is a matter of subject-matter jurisdiction. *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152."); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (stating that UCCJEA is "exclusive jurisdictional basis for making a child custody determination by a court of this state"). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Salminen*, 492 S.W.3d at 38; *In re Burk*, 252 S.W.3d 736, 739 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]). The party seeking to invoke the trial court's jurisdiction has the burden to allege facts that affirmatively demonstrate the court's authority to hear the case. *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.). We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue. *Id.*

In 1999, Texas adopted the UCCJEA, which "was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction

in interstate child-custody matters." *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). The UCCJEA "specifically grants exclusive continuing jurisdiction over child-custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues." *Id.* at 375; *In re Isquierdo*, 426 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). The UCCJEA also contains rules preventing another state from modifying a child-custody determination while the state that made the original determination retains exclusive continuing jurisdiction. *Forlenza*, 140 S.W.3d at 375; *Hart v. Kozik*, 242 S.W.3d 102, 106–07 (Tex. App.—Eastland 2007, no pet.) (stating that UCCJEA's "overarching purposes are to prevent conflicting jurisdiction, relitigation of child custody issues, and deter child abduction," and, to that end, statute limits authority to make custody determinations to one court, even though multiple states might have legitimate interest in parent-child relationship at issue). For purposes of the UCCJEA, a foreign country is treated as if it were a state of the United States. TEX. FAM. CODE ANN. § 152.105(a).

Under the UCCJEA, a Texas court has jurisdiction to make an initial child custody determination in four situations, including, as relevant here, if

> this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or a person acting as a parent continues to live in this state . . . .

14

*Id.* § 152.201(a)(1); *see id.* § 152.102(8) (defining "initial determination" to mean "the first child custody determination concerning a particular child"). Family Code section 152.201(a) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." *Id.* § 152.201(b). The UCCJEA defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7). "A period of temporary absence of a parent or a person acting as a parent is part of the period." *Id.*

Family Code section 152.202 addresses exclusive continuing jurisdiction of a Texas court and provides:

(a) Except as otherwise provided in Section 152.204,[4] a court of this state which has made a child custody determination consistent with Section 152.201 or 152.203[5] has exclusive continuing jurisdiction over the determination until:

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state

---

[4] Section 152.204 provides that Texas courts have "temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." TEX. FAM. CODE ANN. § 152.204(a). Hector has not argued that the trial court has jurisdiction under this provision.

[5] Section 152.203 provides that, except as provided in section 152.204, a Texas court may not modify a child custody determination made by a court of another state except in certain circumstances. *See* TEX. FAM. CODE ANN. § 152.203. Hector did not request that the trial court modify a child custody determination from another state, and this section is therefore not applicable to this case.

15

and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2)    a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(b)    A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 152.201.

*Id.* § 152.202; *id.* § 152.102(3) (defining "child custody determination" to mean "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child" and stating that term "includes permanent, temporary, initial, and modification orders").

"[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present." *Forlenza*, 140 S.W.3d at 379 (noting that plain language of section 152.202(a)(1) provides that jurisdiction continues until trial court determines no significant connection with Texas exists *and* that substantial evidence concerning children's care, protection, training, and personal relationships is no longer available in Texas); *In re Meekins*, 550 S.W.3d 729, 738–39 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding). Even if the child acquires a new home state, the state that made the initial child custody determination retains exclusive continuing jurisdiction "so long as the general requisites of the 'substantial connection' jurisdiction provisions are met." *In*

16

*re Tieri*, 283 S.W.3d 889, 894 (Tex. App.—Tyler 2008, orig. proceeding [mand. denied]). The state that made the initial child custody determination "is the sole determinant of whether jurisdiction continues." *Id.*; *see In re J.P.*, 598 S.W.3d 789, 796 (Tex. App.—Fort Worth 2020, pet. denied) ("The UCCJEA gives [the court that made an initial child custody determination] the sole power to decide whether it will *continue* to exercise that jurisdiction.").

## B. Analysis

### 1. Whether Trial Court Had Jurisdiction to Make Initial Child Custody Determination

In his first issue, Hector argues that the trial court failed to correctly construe the "home state" provision of the UCCJEA. In his second issue, he argues that the trial court erred by not concluding that Texas had jurisdiction to make an initial child custody determination. Hector argues that Texas was the home state of the children at the time he filed for divorce in June 2012.

Hector filed for divorce in Fort Bend County, Texas, in June 2012. It is undisputed that the children had lived in Texas for the six consecutive months immediately before Hector filed for divorce, which commenced the first child custody proceeding involving the children. *See* TEX. FAM. CODE ANN. § 152.102(4) (defining "child custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" and stating that term "includes a proceeding for divorce"), *id.* § 152.102(5) (defining

17

"commencement" as "the filing of the first pleading in a proceeding"). The children did not move to Mexico with Veronica until August or September 2012, after Hector had commenced the divorce proceeding. Hector is therefore correct that, at the time he filed his divorce petition, Texas was the home state of the children. *See id.* § 152.102(7) (defining "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"); *Powell v. Stover*, 165 S.W.3d 322, 328 (Tex. 2005) (holding that, in determining where child lived for purposes of establishing home-state jurisdiction, trial court must consider child's physical presence in state).

Because Texas was the home state of the children on the date the divorce proceeding commenced, Hector is also correct that Texas had jurisdiction under Family Code section 152.201(a)(1) to make an initial child custody determination. *See* TEX. FAM. CODE ANN. § 152.201(a)(1) ("[A] court of this state has jurisdiction to make an initial child custody determination only if . . . this state is the home state of the child on the date of the commencement of the proceeding . . . ."). Contrary to Hector's arguments in his first two issues on appeal, however, the trial court never ruled that it did not have jurisdiction to make an initial child custody determination or that Texas was not the children's home state at the time Hector filed for divorce. In fact, the agreed divorce decree, signed on January 22, 2013, correctly

acknowledged that Texas was the home state of the children. Additionally, the trial court, in its findings of fact and conclusions of law entered after it declined to exercise jurisdiction over Hector's modification and enforcement petitions, correctly found that it had initial child custody jurisdiction under section 152.201(a)(1) when it signed the agreed divorce decree.

The relevant issue in this appeal is whether the trial court, after making an initial child custody determination, retained exclusive continuing jurisdiction over the children. Specifically, the issue is whether the trial court retained exclusive continuing jurisdiction to rule on Hector's motions for modification and enforcement filed in April 2015. We therefore turn to that question.

## 2. Whether Trial Court Lost Exclusive Continuing Jurisdiction

In his third and fourth issues, Hector argues that the trial court erred by concluding that it did not retain exclusive continuing jurisdiction because this conclusion was not supported by evidence in the record. Specifically, Hector contends that evidence before the trial court established that the children had a significant connection with Texas and that substantial evidence concerning their care, protection, training, and personal relationships is available in Texas.

As stated above, a court of this state which has made an initial child custody determination has exclusive continuing jurisdiction over the determination until "a court of this state determines that neither the child, nor the child and one

19

parent . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships," or a court determines that the child and the child's parents do not presently reside in this state. TEX. FAM. CODE ANN. § 152.202(a). Because it is undisputed that Hector still resides in Texas, we focus on whether the children have a significant connection with Texas and whether substantial evidence concerning their care, protection, training, and personal relationships is available in Texas.

"[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present." *Forlenza*, 140 S.W.3d at 379; *In re A.C.S.*, 157 S.W.3d 9, 16 (Tex. App.—Waco 2004, no pet.) ("If either a 'significant connection' exists or 'substantial evidence' is present, then Texas retains jurisdiction."). In determining whether the children have a significant connection with Texas, courts consider "the nature and quality of the child's contacts with the State." *In re T.B.*, 497 S.W.3d 640, 645 (Tex. App.—Fort Worth 2016, pet. denied). "A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard." *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.). Among other factors, courts consider whether the children visited a parent in Texas and whether they maintained a close relationship with a parent or other relatives in Texas, both of which are "important considerations under

the UCCJEA." *Forlenza*, 140 S.W.3d at 377; *see T.B.*, 497 S.W.3d at 646 (listing, as some factors showing significant connection to Texas, whether child resides in state, whether child attends school in state, whether child's family resides in state, and whether parent has made educational plans for child in state); *A.C.S.*, 157 S.W.3d at 16 ("Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent.").

The fact that one parent continues to reside in Texas, standing alone, is not determinative and does not support an exercise of exclusive continuing jurisdiction. *Isquierdo*, 426 S.W.3d at 133–34. The UCCJEA "does not premise the exclusive continuing jurisdiction determination on which state has the *most* significant connection with the child." *Forlenza*, 140 S.W.3d 378 (noting that "[t]his relative type of inquiry is appropriate under section 152.207, which allows a court with exclusive continuing jurisdiction to decline it in favor of a more convenient forum, but it does not affect the initial section 152.202 jurisdictional analysis"). The relevant time frame for determining whether the trial court retains exclusive continuing jurisdiction is when the motion to modify the prior custody order is filed. *See id.* at 376 (agreeing that determination of whether trial court retains exclusive continuing jurisdiction is made "at the proceeding's commencement," or filing of motion to modify prior custody order); *A.C.S.*, 157 S.W.3d at 16 ("The pertinent time frame

21

for this determination is when the motion to modify the prior custody order is filed.").

Here, the trial court signed several orders declining jurisdiction over the case. At Hector's request, the trial court issued findings of fact and conclusions of law. The trial court found that Veronica and the children had moved to Mexico in September 2012, where they had lived continuously ever since. The court found that the parties agreed, in the agreed divorce decree, that the children could continue to live in Mexico until August 1, 2014, but the children would return to Fort Bend County on or before that day. The court, citing email exchanges with Veronica that Hector had attached to a "Motion for Determination of Jurisdiction," found that Hector attempted to exercise visitation on at least seven occasions "which was not facilitated by" Veronica, specifically "Summer Possession 2013, Spring Possession 2014, April 2014, Summer Possession 2015, End of Year 2016, Summer Possession 2017, end of year visitation 2017."[6] The last four visitation attempts enumerated in the trial court's findings occurred after Hector had filed his modification and enforcement petitions. The court found that Hector "maintained a relationship with the children before, during and after the Divorce proceedings," citing an exhibit Hector attached to the "Motion for Determination of Jurisdiction."

---

[6]     The record reflects, however, that Veronica did send the children to Texas for court-ordered visitation with Hector twice—for a week in March 2016 and for a month in the summer of 2016.

22

The trial court also made several findings concerning procedural occurrences during the pendency of the case. The court found that, in March 2016, Veronica initiated a suit in Mexico to terminate Hector's parental rights to the children. The court found that, in an order dated December 6, 2016, it ruled that Veronica's retention of the children in Mexico after August 1, 2014, "breached the child custody rights of Hector Xavier Cortez pursuant to the [Hague] Convention Article 3." The court also found that it had issued three rulings declining jurisdiction over modification of the parent-child relationship, but maintaining jurisdiction over child support issues, in August 2018, November 2018, and April 2019. The court further found "that no legal pleadings were filed until April 21, 2015, more than three years after the mother and child[ren] moved to Mexico." The trial court concluded that "neither the child[ren], nor the child[ren] and one parent, nor the child[ren] and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in the state concerning the child[ren's] care, protection, training and personal relationships." The trial court did not make any findings and conclusions concerning whether Texas is an inconvenient forum.

Hector argues that the trial court erred by concluding that it does not retain exclusive continuing jurisdiction over the case because the children have a significant connection to Texas and substantial evidence concerning their care, protection, training, and personal relationships is available in Texas. We disagree.

It is undisputed that Veronica and the children have lived in Mexico since September 2012, and that they had lived in Mexico for nearly three years at the time Hector filed his modification and enforcement petitions in April 2015. It is also undisputed that Hector lived in Texas at the time he filed for divorce in June 2012 and has continued to live in Texas ever since. It is further undisputed that the parties agreed, in the agreed divorce decree, that the children could live with Veronica in Mexico until August 1, 2014, at which point she was to return to Fort Bend County with the children, but Veronica remained in Mexico with the children after August 1, 2014.

The record contains evidence that the children have visited Hector in Texas only twice since they moved to Mexico in September 2012—for a week in March 2016 and for a month in summer 2016—both of which occurred at the order of the trial court, and both occurred after Hector filed his modification and enforcement petitions. Hector presented evidence, in the form of email exchanges with Veronica, that he had attempted to exercise visitation with the children in Texas on several occasions prior to filing his modification and enforcement petitions—including a month of possession in summer 2013, possession during Holy Week in spring 2014, and a possible visitation in San Antonio in spring 2014—but Veronica did not cooperate. The record also contained evidence that Hector could not visit the children in Mexico due to issues with the State Department's not renewing his

passport[7] and that the children's passports expired during the pendency of the proceedings, and Hector and Veronica were unable to coordinate the necessary documents and notarizations that needed to occur to renew the passports. Hector submitted pictures demonstrating his involvement with the children before the divorce, pictures from his online contacts with the children while they were living in Mexico, and pictures from the two court-ordered visits he had with the children in Texas in 2016.

The record before the trial court included an affidavit by Veronica that she filed with her counter-petition to modify the agreed divorce decree. In this affidavit, Veronica averred that she and the children have lived in Monterrey, Mexico since September 2012, when they moved to Mexico at Hector's request. Veronica and the children live close to Hector's mother in Monterrey, but she does not visit the children often or attend events with the children, even though Veronica invites her. Veronica averred that she has "attempted to promote" the relationship between Hector and the children by telephone, but he rarely answers. She averred that, as of July 2015, Hector had not seen the children in person since January 2013. She stated that Hector and the children communicated through the children's gaming console, but she also stated that, as of the time she learned of Hector's modification

---

[7] Veronica averred that Hector told her that Mexican Border Patrol seized his passport, but that he also told her that he had traveled internationally for his job.

proceeding, Hector had not attempted to speak with the children in three months. Veronica averred that she had attempted to coordinate visitation between the children and Hector in Houston for the month of July 2015, but Hector never responded, and he did not cooperate with her when she told him the children's American passports were to expire in July 2015.

Veronica also averred that she had remarried and that she had health problems during a pregnancy in summer 2014 that prevented her from moving back to Texas with the children. She averred that she discussed these health concerns with Hector, and he agreed that she and the children need not move back to Texas at that time. She also averred that, when she signed the agreed divorce decree at Hector's request, he told her, "if August comes [August 2014] and you don't want to come back [from Monterrey], you can stay." At the time of Veronica's affidavit in July 2015, she was again suffering health complications from another pregnancy and could not travel to Texas. She averred that, in June 2014, Hector stopped making the contractual alimony payments required by the divorce decree, and he stopped listing the children as covered under his health insurance. Veronica averred that the children were covered under her current husband's health insurance, but the children would not be covered in the United States. Veronica also averred that her current husband has a brain tumor, and if he were to move with her and the children to the United States, he and the children would lose their insurance coverage.

Veronica further averred that she works at an "expensive and very reputable private school" in Monterrey and that the children attend the school at no cost. At a hearing on Hector's motion to determine jurisdiction, Veronica's counsel represented that the children were enrolled in "integration therapy" in Mexico as required by the proceedings in the Mexican court.

Based on this record, the only connection the children have to Texas is the fact that Hector lives in Texas. Since the children moved to Mexico in September 2012—a move that Veronica avers occurred at Hector's direction—the children have been to Texas to visit Hector twice, once for less than two weeks and once for a month. There is no evidence in the record that, since moving to Mexico, the children have had friends or other family members in Texas that they have visited, that they have visited doctors in Texas, or that Hector has made any educational plans for the children in Texas. *See T.B.*, 497 S.W.3d at 646 (listing, as some factors showing significant connection to Texas, whether child resides in state, whether child attends school in state, whether child's family resides in state, and whether parent has made educational plans for child in state); *A.C.S.*, 157 S.W.3d at 16 ("Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent."). Instead, the children live in Mexico, at least one member of Hector's family lives near them in Mexico, the children attend school in Mexico,

and the children attend therapy in Mexico. Evidence relevant to the children's care, protection, training, and personal relationships is thus available in Mexico, not in Texas. The fact that Hector lives in Texas and the children have visited him here twice is not enough to support a conclusion that the children have a significant connection to Texas. *See Isquierdo*, 426 S.W.3d at 132–34 (concluding that children did not maintain significant connection to Texas when children had spent previous six years living out of Texas, children had not been present in Texas except for "the few visitations" requested by father, children had had no contact with Texas in three years preceding modification proceeding, and father did not make any visitation requests during those three years, and concluding that father's continued residence in Texas, by itself, did not support exercise of exclusive continuing jurisdiction). Additionally, there is no evidence that Veronica has had any connection to Texas since she moved to Mexico in September 2012.

We therefore conclude that the trial court did not err by determining that neither the children, nor the children and one parent, had a significant connection with Texas and that substantial evidence is no longer available in Texas concerning the children's care, protection, training, and personal relationships. *See* TEX. FAM. CODE ANN. § 152.202(a)(1); *Isquierdo*, 426 S.W.3d at 132–33, 135. We hold that the trial court did not err by ruling that it no longer retains exclusive continuing

28

jurisdiction over the possession, access, and conservatorship aspects of the parent-child relationship between Hector and the children.

We overrule Hector's third and fourth issues.[8]

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

---

[8] In his fifth issue, Hector argues that the trial court erred by refusing to hear his motion for enforcement of the geographic restriction contained in the agreed divorce decree. In this issue, Hector argues that the trial court erred to the extent it declined jurisdiction on the basis that Texas is an inconvenient forum. *See* TEX. FAM. CODE ANN. § 152.207(a)–(b) (providing that if Texas court has jurisdiction under UCCJEA, court may decline to exercise its jurisdiction if it determines that it is an inconvenient forum and court of another state is more appropriate forum, and stating that court "shall consider all relevant factors," including eight specifically enumerated factors). The trial court here did not make any findings or conclusions concerning the factors contained in section 152.207(b). Instead, the trial court based its decision on section 152.202(a)(1), concluding that it did not retain exclusive continuing jurisdiction. Because we conclude that the trial court did not err by concluding that it no longer retained exclusive continuing jurisdiction, the trial court did not err by refusing to hear Hector's motion for enforcement of the geographic restriction, and we need not address the factors relevant to whether Texas is an inconvenient forum, set out in section 152.207(b).

29