**Opinion on Rehearing issued December 28, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————————

**NO. 01-19-00296-CV**

———————————————

**HECTOR CORTEZ, Appellant**

**V.**

**VERONICA GARZA CORTEZ, Appellee**

---

**On Appeal from the 505th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCV-199184**

---

**OPINION ON REHEARING**

Appellant, Hector Cortez, filed a motion for rehearing of our December 29, 2020 opinion. We grant the motion for rehearing, withdraw our December 29, 2020 opinion and judgment, and issue this opinion and judgment in their stead.

This is a suit affecting the parent-child relationship (SAPCR). Hector Cortez and Veronica Garza Cortez were divorced in 2013. The divorce decree required that the primary residence of their minor children be Fort Bend County, Texas, as of August 1, 2014. Hector filed a motion for enforcement of the divorce decree, seeking an order that Veronica return the children from where they had been living with her in Mexico. He also filed a motion to modify the parent-child relationship to grant him the right to designate the primary residence of the children. The trial court declined to exercise jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). In five issues, Hector argues that (1) the trial court failed to correctly construe the "home state" provision of the UCCJEA; (2) the trial court erred by not concluding that Texas had initial child custody jurisdiction; (3)–(4) the trial court erred by concluding that Texas had lost continuing exclusive jurisdiction, a conclusion that was not supported by the record; and (5) the trial court abused its discretion when it declined to hear Hector's motion for enforcement of the geographical restriction.

We reverse and remand.

## Background

Hector and Veronica married in 2001 and had two children: a son born in 2004 and a son born in 2009. Both children were born in Texas.

In June 2012, Hector filed for divorce in Fort Bend County, Texas. In August 2012, Veronica and the children moved to Monterrey, Mexico. On January 22, 2013, the trial court signed an agreed final divorce decree. The agreed divorce decree named Hector and Veronica as joint managing conservators of the children and granted Veronica the exclusive right to designate the primary residence of the children, "subject to the geographic restrictions as stated more particularly herein." The decree included the following provision:

> IT IS ORDERED that the primary residence of the children shall be Fort Bend County, Texas beginning on August 1, 2014. The parties acknowledge and agree that the children are currently living in Monter[r]ey, Mexico with Veronica Garza De Cortez. The parties have further agreed and IT IS THEREFORE ORDERED that the children shall return to Fort Bend County, Texas to live on or before August 1, 2014. Veronica Garza De Cortez is ORDERED to return the children to Fort Bend County, Texas on or before August 1, 2014 for the purpose of designating the permanent residence of the children in Fort Bend County, Texas for all times thereafter. Beginning August 1, 2014 the parties shall not remove the children from Fort Bend County, Texas for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

The decree stated that the "Home State" of both children was Texas. The decree also included a Standard Possession Order addressing Hector's periods of possession of the children, including provisions for extended periods of possession during the summer. The agreed divorce decree obligated Hector to pay child support and spousal maintenance.

3

On April 21, 2015, Hector filed a petition to modify the parent-child relationship. This petition recited that the court had "continuing, exclusive jurisdiction," stated that the children's "County of residence" was Fort Bend County, and stated that Veronica was a "nonresident of Texas." In this filing, Hector stated his belief that the parties would enter into an agreement concerning modification of possession of and access to the children and modification of child support requirements. Hector requested that the trial court make a finding concerning whether a risk of international child abduction by Veronica existed. He also requested that the trial court enter several temporary orders, including an order granting him the exclusive right to designate the primary residence of the children, restricting the residence of the children to Fort Bend County, enjoining Veronica from removing the children from a designated geographic area, and requiring Veronica to surrender the children's passports. The trial court signed temporary orders but did not make a finding concerning the risk of international child abduction.

That same day, Hector filed a "Motion for Enforcement of Possession or Access." In this motion, Hector alleged that Veronica had failed to comply with the agreed divorce decree provisions requiring her to return to Fort Bend County with the children by August 1, 2014, and to establish the children's primary residence within Fort Bend County. Hector alleged that Veronica also failed to comply with

4

the agreed divorce decree "by failing to surrender the children" to him on two or more occasions. He filed a supporting affidavit in which he averred that Veronica had not returned to Fort Bend County "even for a short period of time," and as a result, he had not seen his children "in over a year." He requested that the trial court hold Veronica in contempt and he be allowed additional periods of possession "to compensate for those periods denied by [Veronica]." The trial court ordered Veronica to appear before the court and respond to Hector's motion.

In response to Hector's motions, Veronica filed a plea to the jurisdiction, a request for the trial court to decline jurisdiction under the UCCJEA, and an original answer. Veronica alleged that the court no longer had continuing exclusive jurisdiction because neither the children nor Veronica had a significant connection to Texas. According to Veronica, there was no substantial evidence in Texas concerning the children's care, protection, training, and personal relationships. She asserted that Mexico was the children's "home state"; Texas did not have jurisdiction to make an initial child custody determination; Texas did not have emergency jurisdiction over the children; and the court, therefore, lacked the power to modify the agreed divorce decree. She further argued that, if the court found that it did have continuing exclusive jurisdiction, the court should decline to exercise its jurisdiction because Texas is an inconvenient forum, and Monterrey is a more appropriate forum. Veronica also filed a counter-petition to modify the agreed divorce decree, subject

to her plea to the jurisdiction. In this counter-petition, Veronica requested, among other things, "that the residence of the children be restricted to no lesser area than the state of Texas and Monterrey, Mexico."

Veronica attached an affidavit to her counter-petition to modify. She averred that she and the children had lived in Monterrey since September 2012, and they moved there at Hector's request after he had filed for divorce. She averred that the last time Hector saw the children in person was in Texas in January 2013 when the divorce decree was signed. According to Veronica, he had not visited them in Mexico because he told her that he had "some issue with his passport." She also averred that Hector travels extensively for work—sometimes up to three weeks per month—and he occasionally travels outside of the United States. Veronica stated that Hector's mother lived close by in Monterrey, but she rarely saw the children even though Veronica invited her to family events. She averred that Hector rarely answers when she calls him and he primarily communicates with the children through their gaming console. She averred that, at the time Hector filed his modification petition, Hector had not spoken with the children in three months.

Veronica averred that Hector had only sent the children Christmas presents once in two years and he had never sent any birthday presents. She stated that, after she and the children moved to Monterrey in September 2012, he had never requested that she bring the children to the airport for any possession periods until he emailed

her with a request in June 2015 to spend the month of July 2015 with the children in Houston. Veronica agreed, but Hector never responded to confirm travel arrangements.

Veronica also averred that she had since remarried and she had been pregnant during the summer of 2014, when she was supposed to move back to Fort Bend County, as provided for in the divorce decree. Veronica had medical complications during this pregnancy. She averred that Hector agreed she and the children did not have to move back to Texas but could stay in Mexico through 2014. Veronica was currently pregnant but again had health complications and could not fly to Texas for court proceedings.

According to Veronica, Hector had stopped paying his spousal maintenance payments and had removed the children from his health insurance. She stated that the children were covered through her husband's health insurance, but they would lose that coverage if they moved to the United States, as would her husband, who has a brain tumor. She stated that the children attend a "very reputable private school" in Monterrey free of charge because she works there. Veronica averred that removing the children from her care would present a danger to the children's "emotional health, safety and welfare and mental well-being," noting that they have not spent any time with Hector in over two years and Hector travels frequently.

In February 2016, while his earlier-filed motions were still pending before the trial court, Hector filed a "Motion for Determination of Wrongful Retention." In this motion, Hector stated that he intended to file an application for return of the children from Mexico pursuant to the Convention on Civil Aspects of International Child Abduction ("Hague Convention") and the federal International Child Abduction Remedies Act ("ICARA"). Hector argued that the children's habitual residence was Texas. The children were born in Texas and they lived here until August 2012, when Veronica moved with them to Monterrey.

Hector also argued that he and Veronica intended for the children to live in Mexico on a temporary basis, and he did not agree to "the permanent change of residence of the children from Texas to Mexico." He argued that he had rights of custody to the children pursuant to the agreed divorce decree, which named him as a joint managing conservator and awarded him possession rights under a Standard Possession Order. He further argued that he was exercising his custody rights at the time of the children's removal from Texas "and would continue to be exercising those rights but for [Veronica's] retention of the children in Mexico and interference with [Hector] maintaining contact with them." Hector argued that the trial court retained continuing exclusive jurisdiction over the children, and he requested that the court determine that Veronica had wrongfully removed the children from Texas,

their habitual residence, and wrongfully retained the children in Mexico in violation of the agreed divorce decree.

In March 2016, Veronica filed suit in Mexico seeking termination of Hector's parental rights to the children. Veronica alleged that the parties had agreed, in the agreed divorce decree, that she would establish her domicile in Monterrey. She also alleged that Hector agreed to pay travel expenses for the children's visitation and to include the children on his health insurance, but he did not comply with either requirement. She alleged that, after the divorce, Hector had not seen the children or had parenting time with them; instead, he had abandoned the children. She therefore sought termination of Hector's parental rights.[1] Veronica did not make any allegations that Hector had engaged in domestic violence against her or the children, and there is no evidence of domestic violence in the appellate record.

In Mexico, Hector filed an application for return of the children under the Hague Convention in May 2016. The presiding judge in that proceeding ordered Hector to inquire if the trial court would issue a determination on whether the

---

[1] In filings in the trial court, Hector asserted that this proceeding in Mexico was dismissed on June 22, 2018. The appellate record contains a copy of Veronica's original petition and an order transferring venue to another court in Mexico, but it does not contain an order or judgment dismissing the proceeding. The record does contain an email exchange between the trial court and the Mexican court which includes an email from the judge of the Mexican court that references June 22, 2018, but this email is in Spanish and no English translation of this email is contained in the record.

removal or retention of the children was wrongful, as it is allowed to do before the Mexican court rules on the merits of the Hague Convention proceeding. Hector requested that the trial court make this determination. The trial court agreed to make a determination and ordered that it would do so by September 20, 2016. On December 6, 2016, the trial court determined that "the retention of the children in Mexico by their mother, Respondent Veronica Garza, on August 1, 2014, breached the child custody rights of Hector Xavier Cortez; pursuant to the [Hague] Convention Article 3."[2]

On August 21, 2018, the trial court issued a ruling declining to exercise jurisdiction over the case. Hector filed a motion for reconsideration of this ruling, arguing that the trial court abused its discretion by declining jurisdiction and it erred in finding that Texas was an inconvenient forum because Veronica had engaged in unjustifiable conduct to create jurisdiction in Mexico.

On November 20, 2018, the trial court signed an order informing the parties and the court in Mexico hearing Veronica's suit against Hector that the trial court declined jurisdiction "as it pertains to modification of the Parent-Child Relationship, further defined as possession and access, rights and duties and conservatorship," but

---

[2] The appellate record does not indicate that the proceeding under the Hague Convention in Mexico has been resolved. The record contains evidence reflecting that Veronica filed an "amparo" proceeding in Mexico in December 2016 that had the effect of staying resolution of the Hague Convention proceeding.

it retained jurisdiction "as to matters pertaining to child support enforcement and modification."[3] This order stated, "Jurisdiction concerning the enforcement of possession and access is under advisement." Hector filed a motion for reconsideration of this order as well.

The trial court signed another order declining jurisdiction over the case—but retaining jurisdiction over child support matters—on April 10, 2019. This order cited Texas Family Code section 152.202(a)(1) as the basis for declining jurisdiction. The trial court issued findings of fact and conclusions of law.

The trial court found, among other findings, that Veronica and the children moved to Mexico in September 2012 and had lived there continuously ever since; that Veronica and Hector agreed that the children could continue to live in Mexico until August 1, 2014, and the trial court ordered the children to return by this date; Hector attempted to exercise visitation at least seven times from 2013 through 2017, but this "was not facilitated by" Veronica; Hector "maintained a relationship with the children before, during and after the [d]ivorce proceedings";[4] and the trial court

---

[3] At the hearing on the entry of this order, the trial court stated, "I'm not calling witnesses from Mexico to come here and testify. That's why I've declined jurisdiction. . . . They've been there a long time."

[4] With respect to the findings that Veronica did not facilitate Hector's attempts at exercising visitation and that Hector maintained a relationship with the children, the trial court expressly stated that these findings were based on evidence Hector attached to a brief in support of the trial court's retention of jurisdiction, specifically, email exchanges between Hector and Veronica and pictures of Hector with the

11

previously found that Veronica's retention of the children in Mexico after August 1, 2014, breached Hector's custody rights under the agreed divorce decree. The court concluded, however, that "neither the child[ren], nor the child[ren] and one parent, nor the child[ren] and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in the state concerning the child[ren's] care, protection, training and personal relationships."

This appeal followed.

## Jurisdiction Under the UCCJEA

In five issues on appeal, Hector challenges the trial court's orders ruling that it does not have exclusive continuing jurisdiction over his modification and enforcement petitions. In his first two issues, Hector contends that the trial court did not correctly construe the "home state" provision and erroneously concluded that Texas did not have jurisdiction to make an initial child custody determination. In his third and fourth issues, he contends that the trial court erred by concluding that it lacked exclusive continuing jurisdiction because this conclusion was not supported by evidence in the record.

Finally, in his fifth issue, Hector argues that the trial court erred by not hearing his motion for enforcement of the geographical restriction contained in the agreed

children before the divorce and on two court-ordered periods of visitation that occurred in 2016.

divorce decree. As part of this issue, Hector argues that the trial court erred to the extent it declined jurisdiction because Texas was an inconvenient forum.

## A.    Standard of Review and Governing Law

Whether a trial court has jurisdiction under the UCCJEA is a matter of subject-matter jurisdiction. *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152."); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no pet.) (stating that UCCJEA is "exclusive jurisdictional basis for making a child custody determination by a court of this state").

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *In re Salminen*, 492 S.W.3d at 38; *In re Burk*, 252 S.W.3d 736, 739 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]). The party seeking to invoke the trial court's jurisdiction has the burden to allege facts that affirmatively demonstrate the court's authority to hear the case. *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.). We construe the pleadings in favor of the party invoking jurisdiction and consider relevant evidence when necessary to resolve the jurisdictional issue. *Id.*

In 1999, Texas adopted the UCCJEA, which "was designed, in large part, to clarify and to unify the standards for courts' continuing and modification jurisdiction

13

in interstate child-custody matters." *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). The UCCJEA "specifically grants exclusive continuing jurisdiction over child-custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues." *Id.* at 375; *In re Isquierdo*, 426 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).

The UCCJEA also contains rules preventing another state from modifying a child-custody determination while the state that made the original determination retains exclusive continuing jurisdiction. *In re Forlenza*, 140 S.W.3d at 375; *Hart v. Kozik*, 242 S.W.3d 102, 106–07 (Tex. App.—Eastland 2007, no pet.) (stating that UCCJEA's "overarching purposes are to prevent conflicting jurisdiction, relitigation of child custody issues, and deter child abduction," and, to that end, statute limits authority to make custody determinations to one court, even though multiple states might have legitimate interest in parent-child relationship at issue). For purposes of the UCCJEA, a foreign country is treated as if it were a state of the United States. TEX. FAM. CODE § 152.105(a).

Under the UCCJEA, a Texas court has jurisdiction to make an initial child custody determination in four situations, including, as relevant here, if

> this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent

14

from this state but a parent or a person acting as a parent continues to live in this state.

*Id.* § 152.201(a)(1); *see id.* § 152.102(8) (defining "initial determination" to mean "the first child custody determination concerning a particular child").

Family Code section 152.201(a) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." *Id.* § 152.201(b). The UCCJEA defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7). "A period of temporary absence of a parent or a person acting as a parent is part of the period." *Id.*

Family Code section 152.202 addresses exclusive continuing jurisdiction of a Texas court and provides:

> (a)     Except as otherwise provided in Section 152.204,[5] a court of this state which has made a child custody determination consistent with Section 152.201 or 152.203[6] has exclusive continuing jurisdiction over the determination until:

---

[5]     Section 152.204 provides that Texas courts have "temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." TEX. FAM. CODE § 152.204(a). Hector has not argued that the trial court has jurisdiction under this provision.

[6]     Section 152.203 provides that a Texas court may not modify a child custody determination made by a court of another state except in certain circumstances. *See* TEX. FAM. CODE § 152.203. Hector did not request that the trial court modify a child

15

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

(b) A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 152.201.

*Id.* § 152.202; *see id.* § 152.102(3) (defining "child custody determination" to mean "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child" and stating that term "includes permanent, temporary, initial, and modification orders").

"[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present." *In re Forlenza*, 140 S.W.3d at 379 (noting that plain language of section 152.202(a)(1) provides that jurisdiction continues until trial court determines no significant connection with Texas exists *and* substantial evidence concerning care, protection, training, and

custody determination from another state, and this section is therefore not applicable to this case.

16

personal relationships is no longer available in Texas); *In re Meekins*, 550 S.W.3d 729, 738–39 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding).

Even if the child acquires a new home state, the state that made the initial child custody determination retains exclusive continuing jurisdiction "so long as the general requisites of the 'substantial connection' jurisdiction provisions are met." *In re Tieri*, 283 S.W.3d 889, 894 (Tex. App.—Tyler 2008, orig. proceeding [mand. denied]). The state that made the initial child custody determination "is the sole determinant of whether jurisdiction continues." *Id.*; *see In re J.P.*, 598 S.W.3d 789, 796 (Tex. App.—Fort Worth 2020, pet. denied) ("The UCCJEA gives [the court that made an initial child custody determination] the sole power to decide whether it will *continue* to exercise that jurisdiction.").

## B. Analysis

### 1. Whether Trial Court Had Jurisdiction to Make Initial Child Custody Determination

In his first issue, Hector argues that the trial court failed to correctly construe the "home state" provision of the UCCJEA. In his second issue, he argues that the trial court erred by not concluding that Texas had jurisdiction to make an initial child custody determination. Hector argues that Texas was the home state of the children at the time he filed for divorce in June 2012.

Hector filed for divorce in Fort Bend County, Texas, in June 2012. It is undisputed that the children had lived in Texas for the six consecutive months

17

immediately before Hector filed for divorce, which commenced the first child custody proceeding involving the children. *See* TEX. FAM. CODE § 152.102(4) (defining "child custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" and stating that term "includes a proceeding for divorce"), *id.* § 152.102(5) (defining "commencement" as "the filing of the first pleading in a proceeding").

The children did not move to Mexico with Veronica until August or September 2012, after Hector commenced the divorce proceeding. Hector is therefore correct that, at the time he filed his divorce petition, Texas was the home state of the children. *See id.* § 152.102(7) (defining "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"); *Powell v. Stover*, 165 S.W.3d 322, 328 (Tex. 2005) (holding that, in determining where child lived for purposes of establishing home-state jurisdiction, trial court must consider child's physical presence in state). Because Texas was the home state of the children on the date the divorce proceeding commenced, Hector is also correct that Texas had jurisdiction under Family Code section 152.201(a)(1) to make an initial child custody determination. *See* TEX. FAM. CODE § 152.201(a)(1) ("[A] court of this state has jurisdiction to make an initial child custody determination only if . . . this state

18

is the home state of the child on the date of the commencement of the proceeding . . . .").

Contrary to Hector's arguments in his first two issues on appeal, however, the trial court never ruled that it did not have jurisdiction to make an initial child custody determination or that Texas was not the children's home state at the time Hector filed for divorce. In fact, the agreed divorce decree, signed on January 22, 2013, correctly acknowledged that Texas was the home state of the children. Additionally, the trial court, in its findings of fact and conclusions of law entered after it declined to exercise jurisdiction over Hector's modification and enforcement petitions, correctly found that it had initial child custody jurisdiction under section 152.201(a)(1) when it signed the agreed divorce decree.

The relevant issue in this appeal is whether the trial court, after making a child custody determination, retained exclusive continuing jurisdiction over the children. Specifically, the issue is whether the trial court retained exclusive continuing jurisdiction to rule on Hector's motions for modification and enforcement filed in April 2015. We therefore turn to that question.

### 2. Whether Trial Court Lost Exclusive Continuing Jurisdiction

In his third and fourth issues, Hector argues that the trial court erred by concluding that it did not retain exclusive continuing jurisdiction because this conclusion was not supported by evidence in the record. Specifically, Hector

contends that evidence before the trial court established that the children had a significant connection with Texas that satisfied section 152.202(a). He further contends that substantial evidence concerning their care, protection, training, and personal relationships is available in Texas.

We hold that both Hector and the children have a significant connection with the State of Texas. We therefore do not reach the question whether substantial evidence exists in Texas.

Family Code Section 152.202 establishes that the court of the state which has made an initial child custody determination has exclusive continuing jurisdiction over the determination until "a court of this state determines that neither the child, nor the child and one parent . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships" or a court determines that the child and the child's parents do not presently reside in this state. TEX. FAM. CODE § 152.202(a). Pursuant to this plain statutory text, "exclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present." *In re Forlenza*, 140 S.W.3d at 379. "If either a 'significant connection' exists or 'substantial evidence' is present, then Texas retains jurisdiction." *In re A.C.S.*, 157 S.W.3d 9, 16 (Tex. App.—Waco 2004, no pet.). The relevant time frame for determining whether the trial court retains exclusive

continuing jurisdiction is the period preceding April 2015, when Hector filed his motion to modify the divorce decree. *See id.* ("The pertinent time frame for this determination is when the motion to modify the prior custody order is filed.").

In determining whether the children have a significant connection with Texas, courts consider "the nature and quality of the child's contacts with the State." *In re T.B.*, 497 S.W.3d 640, 645 (Tex. App.—Fort Worth 2016, pet. denied). Courts consider whether the children visited a parent in Texas and whether they maintained a close relationship with a parent or other relatives in Texas, both of which are "important considerations under the UCCJEA." *In re Forlenza*, 140 S.W.3d at 377; *see In re T.B.*, 497 S.W.3d at 646. "Visitation within the state is generally considered as evidence of a significant connection, particularly when the children maintain a relationship with relatives in the state other than the noncustodial parent." *In re A.C.S.*, 157 S.W.3d at 16. "A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard." *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.).

The child's actual presence in the state is not the only relevant consideration, however. "One party's efforts to thwart the other party's rights to access to the child may be considered in the court's analysis under Section 152.202(a)(1)." *In re A.X.T.*, No. 06-16-00044-CV, 2017 WL 510554, at *3 (Tex. App.—Texarkana Feb. 8, 2017, no pet.) (mem. op.); *In re Majors*, No. 12–15–00193–CV, 2015 WL 7769555, at *4

21

(Tex. App.—Tyler Dec. 3, 2015, orig. proceeding) (mem. op.); *see In re Forlenza*, 140 S.W.3d at 376 (presuming that trial court, in denying father's motion to decline jurisdiction in favor of Virginia, accepted mother's testimony that more visitation with children would have occurred in Texas but for father's actions and fact that children were not allowed to fly to Texas); *cf. In re Brilliant*, 86 S.W.3d 680, 692 (Tex. App.—El Paso 2002, no pet.) (stating that court was "disinclined to accord much weight to attachments" child may have developed in Massachusetts when mother moved her there "in complete and utter disregard of a court order" to remain in Texas). Consequently, in determining whether the children have a significant connection to Texas, we cannot ignore evidence of Veronica's continuous disregard of the divorce decree and her thwarting of Hector's rights to have the children visit him in Texas.

It is undisputed that both of the children—born in 2004 and 2009—lived in Texas for their entire lives before Veronica moved them to Mexico. The children attended religious services in Texas, and the older child was involved in a youth soccer program and Little League.[7] Hector served as a coach for both teams.

---

[7] In the Hague Convention application that Hector filed in May 2016, Hector provided details concerning the children's "habitual residence" in Texas. Hector stated that the children had lived in Texas continuously from their births until Veronica removed them from Texas in the summer of 2012. He stated that his older son had "attended Texas schools, participated in Katy Youth Soccer Association and Katy American Little League where Hector Cortez served as coach, attended church and

The trial court found that the children maintained a relationship with Hector during this period. After moving to Mexico with Veronica in what was supposed to be an agreed temporary relocation, the children should have returned to Texas by August 1, 2014. The trial court expressly found that the divorce decree allowed Veronica and the children to live in Mexico only until August 1, 2014. The divorce decree "ORDERED that the children shall return to Fort Bend County to live on or before August 1, 2014." Undisputedly, Veronica violated this decree. Indeed, the trial court concluded as much when it found that "the retention of the Children in Mexico by the mother on August 1, 2014 breached the child custody rights of Hector Xavier Cortez pursuant to the [Hague] Convention Article 3."

Beyond violating the divorce decree, Veronica interfered with Hector's access to the children in other ways. The trial court further found that Hector "attempted to exercise visitation at least seven (7) times which was not facilitated by" Veronica, particularly on "Summer Possession 2013, Spring Possession 2014, April 2014, Summer Possession 2015, End of Year 2016, Summer Possession 2017, [and] end of year visitation 2017." Record evidence supports this finding. Email exchanges between Hector and Veronica confirmed that Hector sought possession in summer 2013, possession during Holy Week in spring 2014, and a possible visitation in San

had extensive friendships with other children in Texas." Hector stated that his younger son "attended church day care on Sundays."

23

Antonio in spring 2014—but Veronica did not cooperate. With respect to the summer 2013 visitation period, the email exchange reflects that Hector had scheduled a doctor's appointment for one of the children in the Houston area for a consultation before a possible surgery, but this appointment did not occur because the visitation did not occur. Nevertheless, the trial court found that Hector maintained a relationship with the children before, during, and after the divorce proceedings.

On these facts, we hold that both Hector and the children have maintained a "significant connection" to Texas, particularly given the children's longstanding Texas residence and the fact that they would have resumed living in Texas but for Veronica's divorce decree violation. The Tyler Court of Appeals' opinion in *In re Majors* is instructive on this point. *See* 2015 WL 7769555, at *1–4. In that case, a mother and father had lived with their three children in Texas until the father left the family to return to his home state of Virginia. *Id.* at *1. The Texas divorce decree appointed both parents as joint managing conservators of the children, but the decree gave the mother the right to designate the children's primary residence. *Id.* The father took the children to Virginia for summer vacation in 2013. *Id.* During that summer, the mother, who was studying for a nursing degree in Texas, agreed to allow the children to stay with their father in Virginia for the following school year. *Id.* At the

24

close of the school year, however, the father refused to return the children to the mother in Texas. *Id.*

In July 2014, the father filed a petition to modify the parent-child relationship in the Texas trial court that issued the divorce decree, and the mother filed a counter-petition. *Id.* In May 2015, the father filed a plea to the jurisdiction arguing that the trial court had lost exclusive continuing jurisdiction because the children had not been in Texas since June 2013, and they had developed substantial connections with Virginia. *Id.* at *1–2.

The trial court denied the plea to the jurisdiction, and the Tyler Court affirmed. In affirming, the Tyler Court expressly rejected the father's argument that the children "no longer have a significant connection to Texas" because they have "been with him in Virginia for over two years." *Id.* at *4. The court emphasized that both the mother and the father were "required by law to comply with the court's divorce decree," which gave the mother the right to designate the children's primary residence. *Id.* at *3. The father was in "violation of the court's divorce decree" when he refused to return the children in 2014. *Id.* The court noted that the children attended school and church in Virginia and had established relationships with friends and family there, but it held that the trial court could have reasonably believed that these "circumstances would not exist if [the father] had not wrongfully retained the children in Virginia," and the father's "jurisdictional arguments cannot be successful

25

because of his wrongdoing." *Id.* at *4 (citing *In re Brilliant*, 86 S.W.3d at 692). Just as in *In re Majors*, here, the circumstances that Veronica invoked to justify the trial court's conclusion that it no longer had exclusive continuing jurisdiction would not have existed but for her wrongful retention of the children outside of Texas in violation of the divorce decree.

Likewise, Texas courts consider a parent's blocking of visitation in considering whether children continue to have a "significant connection" with the State of Texas. In *In re Forlenza*, the Texas Supreme Court held that the children maintained significant connections with Texas that satisfied section 152.202(a)(1) even though the children had visited Texas just six times in the four-year period preceding the action. *See* 140 S.W.3d at 376–77. In so holding, the court credited evidence that the mother "maintained a significant relationship with her children." *Id.* at 377. The court also "presume[d] that the trial court accepted as true [the mother's] testimony that more visitation would have occurred in Texas but for [the father's] actions and the fact that the children were not allowed to fly to Texas." *Id.* at 376.

Intermediate courts of appeals have held similarly. For example, the Amarillo Court of Appeals held that the trial court did not err in concluding that the child retained significant connections with Texas when, among other circumstances, the father had "exercised or attempted to exercise his visitation rights with the child in

Texas on multiple occasions," and "may have had more contact with the child in Texas but for the actions of [the mother]." *In re L.E.*, No. 07-02-0417-CV, 2004 WL 62712, *2–3 (Tex. App.—Amarillo Jan. 14, 2004, pet. denied) (mem. op.); *In re A.X.T.*, 2017 WL 510554, at *3 (holding that "significant" interference with Texas-resident-parent's visitation rights by child's managing conservator—child's aunt who lived in North Carolina—"support[ed] the [Texas] trial court's retention of jurisdiction under Section 152.202(a)(1)").

In sum, we hold that the children did not lose their significant connection to Texas during the period that they lived in Mexico and were prevented from seeing their father in Texas. We therefore conclude that the trial court erred by determining that it no longer retained exclusive continuing jurisdiction. *See In re Forlenza*, 140 S.W.3d at 379 ("[E]xclusive jurisdiction continues in the decree-granting state as long as a significant connection exists *or* substantial evidence is present."); *In re A.C.S.*, 157 S.W.3d at 16 ("If either a 'significant connection' exists or 'substantial evidence' is present, then Texas retains jurisdiction."). We hold that the trial court retains exclusive continuing jurisdiction over the child custody determination.

We sustain Hector's third and fourth issues.[8]

---

[8] In his fifth issue, Hector argues that the trial court erred by refusing to hear his motion for enforcement of the geographic restriction contained in the agreed divorce decree. In this issue, Hector argues that the trial court erred to the extent it declined jurisdiction on the basis that Texas is an inconvenient forum. *See* TEX. FAM. CODE § 152.207(a)–(b) (providing that if Texas court has jurisdiction under UCCJEA,

27

## Conclusion

We reverse the judgment of the trial court and remand this case for further proceedings.

April L. Farris
Justice

Panel consists of Justices Landau, Rivas-Molloy, and Farris.

court may decline to exercise jurisdiction if it determines that it is an inconvenient forum and court of another state is more convenient forum, and stating that court "shall consider all relevant factors," including eight specifically enumerated factors). The trial court here did not make any findings or conclusions concerning the factors contained in section 152.207(b). Instead, the trial court based its decision on section 152.202(a)(1), concluding that it did not retain exclusive continuing jurisdiction. The trial court did not conclude that it had jurisdiction but that it declined to exercise that jurisdiction because Texas is an inconvenient forum. Nothing in this opinion should be read as prohibiting the trial court from addressing on remand the question of whether Texas is an inconvenient forum and Mexico is a more appropriate forum.